## The Richmond & Danville Railroad Co. *v.* Jefferson.

A colored passenger upon a railway train is entitled to the same protection against drunken and violent men seeking to molest, outrage and humiliate him as a white passenger. This protection must be afforded by the conductor to the extent of all the power with which he is clothed by the company or by the law, and his failure to afford it, when he has knowlege that there is occasion for his interference, will subject the company to liability in damages. A verdict for $1,000.00 in this case was not excessive.

May 2, 1892. Gober, Judge, presiding, by consent of parties, in place of Simmons, J., absent from providential cause.

Railroad passenger. Police power of conductor. Damages. Before Judge Van Epps. City court of Atlanta. September term, 1891.

The plaintiff sued the railroad company for damages, and obtained a verdict for $1,000. The defendant moved for a new trial, and the motion was overruled. The grounds of the motion were, that the verdict was contrary to evidence, without evidence to support it, decidedly and strongly against the weight of evidence, showing undue bias and prejudice against the defendant, and for a grossly excessive amount; and that the court erred in charging the jury as to the police powers of the

conductor of the train, it being alleged that defendant would not be liable in damages nor negligent in fact while the conductor was acting in the duties of a police officer, and that this charge misled the jury by causing them to think this police provision added to the measure of defendant's duty to passengers, and thereby augmented the damages found.

The plaintiff had two witnesses besides himself, as to the occurrences on the train which formed the basis of the suit. From their testimony it appears that the plaintiff, a colored man, bought his ticket and entered the coach in which colored people travelled; that the conductor came through and took up his ticket with the others; and that after the train had run some miles, two white men entered the coach in a state of drunkenness, using foul and profane language. They approached the plaintiff and Cary, another negro sitting near him, and began to tyrannize over them in various ways, cursing them, punching them with the muzzle of a pistol, threatening to shoot them and to throw them from the train, and subjecting them to repeated insults and abuse. Finding that Cary was a preacher, they compelled him to sing religious songs, and during the whole proceeding (lasting for nearly half an hour) they engaged in loud talking, oaths, threats and general turbulence. The conductor passed through the car two or three times and saw what was going on, but made no effort to arrest the disturbance, and although he was appealed to by Cary, he merely winked and failed to interfere. The assaults were unprovoked, and were not resisted. The aggressors soon afterwards left the train at a station.

The witnesses for the defendant were the conductor and flagman of the train. They denied having noticed that the white men were very disorderly, or having seen the pistol, or having heard any threats. The conductor testified that as he passed through the coach,

Cary told him that some men were trying to run over them in there, and witness replied that he would see they were not hurt; that as soon as he took up the tickets he returned and got the white men to the back of the car where he talked to them to keep them away from the negroes; that they were laughing and joking, and seemed to be all in fun; and that while they seemed to be very familiar with the negroes, he did not think they were doing any harm. He had sufficient force on the train to have ejected them had it been necessary. They first entered the ladies' coach, and started to drink liquor there, but he would not allow it, and had them to go into the smoking-car where the negroes were. He was on his guard, and intended to stop them if they reached beyond the limit into disorder. It is very often the case they go on that way, etc.

JACKSON & JACKSON, for plaintiff in error.

THOMAS & STRICKLAND and ALEXANDER & LAMBDIN, *contra.*

GOBER, Judge.

The official report sets forth the facts. The plaintiff in error complains that the verdict is contrary to law and contrary to evidence; complaint is made, further, that the court erred in giving in charge to the jury the following: "To this end, our law invests conductors of passenger-trains with all the powers, duties and responsibilities of police officers while on duty on trains. When a person is guilty of disorderly conduct, or uses any obscene, profane or vulgar language in passenger-trains, the conductor may stop the train at the place where the offence is committed, or at the next stopping place of said train, and eject such passenger, and the conductor may command the assistance of the employees of the company and of the passengers on the train to assist in such removal, or the conductor may detain a disorderly passenger and deliver him over to the authorities."

The plaintiff, a colored man, was a passenger on defendant's railroad train from Atlanta to Athens; he had paid full fare for a ticket, and was in his proper place; he had complied with all the obligations put upon him by the law to entitle him to be carried to his destination by this defendant. Upon it was the duty of carrying him with extraordinary diligence on behalf of itself and agents, to protect his life and person, though not liable for injuries to the person after having used such diligence. During the course of his journey, the plaintiff was insulted, assaulted and beaten; he was cursed and abused by two drunken passengers. The conductor was appealed to, and refused to interfere; the plaintiff was made to dance and sing; he was subjected to many indignities.

Under the facts, the question presented is a new one in this State. From Hutchinson on Carriers, §595, we have: "The passenger is entitled to not only every precaution which can be used for his personal safety by the carrier, but also to respectful treatment from him and his servants. From the moment the relation commences, as has been seen, the passenger is in a great measure under the protection of 'the carrier, even from the violent conduct of other passengers or of strangers who may be temporarily upon his conveyance." Sequent is §596: " The carrier's obligation is to carry his passenger safely and properly, and to treat him respectfully; and if he intrusts the performance of this duty to his servants, the law holds him responsible for the manner in which they execute the trust. The law now seems to be well settled that the carrier is obliged to protect his passenger from violence and insult, from whatever source arising. He is not regarded as an insurer of his passenger's safety against every possible source of danger; but he is bound to use all such reasonable precautions as human judgment and foresight are capable of, to make

his passenger's journey safe and comfortable.  He must not only protect his passenger against the violence and insults of strangers and co-passengers, but *a fortiori* against the violence and insults of his own servants."

These men, whose acts are set forth in this record, amused themselves by tormenting and insulting this plaintiff.  It seems that the conductor, signalling with a wink, was willing that it should go on; the defendant company, through this representative, forgot, for the time, that it had this plaintiff's money in its coffers and was under contract and obligation to carry him safely and comfortably.  This conductor placed his passenger at the mercy of these drunken brutes, for their distraction and occupation.  It would be strange, indeed, if there were no law to extend protection to passengers under such circumstances; it would follow that the good and pure women of this State have no protection on railroad trains beyond what it suits conductors to give them, and that they are subject to the insults of any beast whose liquor and lust combine for an assault. There are few conductors who would see a passenger mistreated; the law says no conductor shall permit it. The postulate of the plaintiff in error demands too much.

This verdict is not contrary to the law and the evidence.  There was no error in giving in charge to the jury the law in reference to the police powers of conductors.  The statute gives to conductors this power, and, when it is necessary, it is incumbent upon them to make a reasonable use of it.  As to the other points, no error appears.    *Judgment affirmed.*