## SOUTHERN RAILWAY COMPANY v. MORRISON.

1. A railway company is not liable for personal injuries received by an employee of one of its patrons in moving a loaded freight-car which had been delivered and left safely standing on a side-track for the purpose of being unloaded, even though such injuries may have been occasioned because of a defect in a brake attached to the car and the company was chargeable with notice of its condition, if the person was injured in consequence of his having voluntarily placed himself in a perilous situation and failed to exercise ordinary care and diligence as to the matter of his own safety.

2. Whether the agent of the railroad company did or did not consent that the consignee should move the loaded car from the place of delivery to a point on the track more convenient for the consignee, if in so moving the car it conclusively appears that the person injured stood on the bumper of the car with one foot against the lumber with which it was loaded, and in this position attempted to control the movements of the car by the use of the brake while passing down a grade, and if it be further shown that while in such position he fell and was run over by the car, such gross negligence and want of care will bar a recovery against the railroad company, whether the car was or was not moved with the assent of the railroad company.

Argued June 13, — Decided October 13, 1898.

Action for damages. Before Judge Proffitt. City court of Elberton. August term, 1897.

Nathan Morrison, who was a laborer in the employment of A. S. Campbell, was injured by being thrown from a moving car on the Elberton Air-Line Railroad, to which car he was endeavoring to apply the brakes. He contended that this brake was defective in having before been cracked, weakened or broken, so that when he applied to it the force necessary to stop the car, the brake-rod severed and he was thrown from the car under the wheels. He further contended that this defective condition of the brake was unknown to him, and in the exercise of due diligence should have been known to the defendant company. Further, that the defendant company was in control of and operating the Elberton Air-Line Railroad, and that it was in pursuance of instructions given by defendant's agent to Campbell, the consignee, that plaintiff was on the car assisting in the movement of it from one place to another for the purpose of unloading the lumber thereon which was consigned to Campbell. The material allegations and contentions of the plaintiff were

denied by defendant.   Under the evidence and charge of the
court the jury found for the plaintiff, and defendant's motion
for a new trial was overruled.   For the other facts see the opin-
ion.

 *George C. Grogan, Asbury G. McCurry* and *Hamilton Mc-
Whorter,* for plaintiff in error.   *Wm. D. Tutt,* contra.

LITTLE, J.   This was an action to recover damages for a tort
alleged to have been committed by the plaintiff in error on the
person of the defendant in error.   In addition to the statement
of the case given above, it is only necessary, for the considera-
tion of the principles of law on which we think the decision of
the case must rest, to refer to certain portions of the evidence
contained in the record.   A car-load of lumber consigned to
Campbell, which was sold by the latter to the Elberton Planing
Mill, was transported by the plaintiff in error over its road to
Elberton, and placed on a side-track leading to the planing-
mill, being coupled to two other cars.   Campbell, the consignee,
hired the defendant in error and other laborers to unload
the lumber from this car.   When they were making prepara-
tions to unload the lumber the person in charge of the planing-
mill objected to its being unloaded at the particular point where
the car had been placed by the railroad company.   Then, ac-
cording to the witness King Morrison, "he went to see Mr.
Campbell, who was down at the depot, on the platform," and
told him of the objection raised to having the car unloaded at
the place where it stood.   This witness further stated that then
the agent of the railroad told Mr. Campbell that the car would
have to be unloaded, and if not promptly unloaded he would
have to pay storage on it, and that " it would have to be un-
loaded if it has to be moved."   Campbell, the consignee, testi-
fied that the car could have been unloaded where it was.
" When Morrison came down to tell me what Mr. Swearingen
said about not mixing the lumber, Champion [the agent]
asked me when I was going to get the car unloaded. . . I told
him what Swearingen had said.   He said: 'The lumber does
not belong to Swearingen, it belongs to you; and I must get it
unloaded or you must pay storage.'   He said that ' the car will

have to be unloaded if it has to be moved.' He did not, how-
·ever, make any proposition to move it. I know that he needed
the car. The freight-train had left. I never knew of any cars
being moved on that side-track before by the consignee with the
knowledge and consent of the company. The lumber on the
car was loaded high, and bulged forward some and rested
against the brake. I have known of consignees moving cars on
that track, but never knew it done with the knowledge of the
agent of the railroad. The grade at that point was rather
steep, and a car could get away from you." The evidence fur-
ther tended to show that the brake on this car was defective;
that before being moved it was safely "chocked"; that the rail-
road company was in the habit of leaving cars on the side-track
to be unloaded for the planing-mill, and the consignees moved
them whenever they wanted to do so. A witness testified that
he did not know that any agent of the company knew of such
moving, but was sure that some of the train-hands did. The
engineer who brought in the car testified that the car causing
the injury was left on the side-track at Elberton near the pla-
·ning-mill, at a point designated by the foreman of the mill,
scotched up and in an entirely safe condition. The defendant
in error testified that his leg was cut off by a car running over
it, while he was in the employ of Campbell, unloading lumber.
·" The lumber was loaded on a flat car and Campbell told me to
get up there and stop the car when it started off. The lumber
was loaded so high that I could not stand on it. I put one foot
on the bumper and the other against the lumber and got hold of
the brake. . . I started to turn the brake, when it broke off. . .
There was no other place on the car that I could have gotten on
to operate the brake. I got on the loaded car, put one foot on
the bumper and the other on the lumber, and undertook to reg-
ulate with the brake the speed of the car down grade. I did
not know the use of the rachet-wheel, I did not know it was
fixed to hold the brake when it was applied. . . I never
worked on a railroad. As I started to turn the brake it broke
off. I fell off in front of the car, which ran over my leg." The
evidence is voluminous. There was no conflict as to the man-
ner in which the injury was inflicted, and we have only referred

to certain portions of the evidence in order to ascertain the relative rights of the parties.

The theory of the plaintiff in the court below was that the railroad company was guilty of negligence in not having a proper and safe brake on the car. Assuming that the brake was defective, was that fact, as to this plaintiff, negligence? The presumption of negligence against common carriers where there is a loss of goods arises by operation of law. Civil Code, § 2264. And a railroad company is liable for any damages done to persons or property by the running of locomotives or cars, the presumption in all cases being against the company. Civil Code, § 2321. But evidently the running of locomotives or cars referred to in the statute is confined to those cases where the company, by its servants, agents or employees, is operating the cars or locomotives in some manner. Even in these cases, notwithstanding the presumption, no one can recover damages for injuries to person or property sustained by such running of the locomotive or cars, where the injury is caused by his own negligence. Civil Code, § 2322. It is elementary law that where there is no duty there is no negligence, and that a party who bases an asserted right of action upon the negligence of the defendant must show the breach of a specific duty owing to him. Elliott, Railroads, 602. We are of the opinion that no presumption of negligence arises, under the facts of this case, against the railroad company, because the injury was not occasioned by the operation or running of the car by any servant, agent or employee of the railroad company. The injured man was a stranger to the company. He himself testified not only that he was not an employee of the railroad company, but that at the time he undertook to manage the car he did so as the employee of the consignee, and by the express direction of the latter; that he was wholly inexperienced in such matters; and unless we can treat the consignee as authorized to act for the company in putting the car in motion, no presumption of negligence can, as a matter of law, arise against the railroad company.

In his work on Torts (2d ed. 660), Judge Cooley lays down the rule that in every case, in order to recover, the person in-

jured must point out the duty which is supposed to have been neglected, and how it arose. As no presumption of negligence can arise under the facts of this case, what duty to the defendant in error has been shown to rest on the company? It was not that of a carrier of passengers, nor can it be that due by a railroad company to an employee. The maxim respondeat superior means that a railway, like other masters, is civiliter responsible for the acts of its servants, if the particular act causing the injury be within the scope of and be done in the exercise of the servant's delegated authority. Patterson's Ry. Acc. Law, 99. And the reason of the rule is explained to be, that where one is injured by the act of another, and it is sought to make some person other than the one who occasioned the injury responsible, it is sufficient to show that the person whose neglect caused the injury was at the time not acting on his own account, but as a servant in the business of his master, and the damage resulted because the business was not conducted with due care. Id. 100. But the rule does not apply to cases where the railway does not stand in the character of employer to the person by whose act the injury has been occasioned. See 63 N. Y. 556; 105 Pa. St. 142; 10 Allen, 387. The person shown to have been injured in this case was not an employee, and the duty of providing safe machinery, tools and appliances did not extend to him. The test of the existence of the relation of master and servant is found in the exercise by the railway company of authority in appointing the servant, in directing his acts, in receiving the benefit of his acts, and in reserving the power of dismissal. Patterson's Ry. Acc. Law, § 104, and authorities cited in note 6. The defendant in error, when his relation is so tested, can not be treated as an employee, and there did not exist any duty on the part of the company to him in that capacity.

But it is said by counsel for defendant in error, that the principle ruled by this court in the case of *Savannah, Florida & Western Railway Co.* v. *Booth,* 98 *Ga.* 20, controls this case in his favor. Such is not our construction of the ruling made in that case. We have carefully examined it, and think that the case is rested on sound legal principles not applicable here. There the railroad company undertook to furnish cars to be

loaded with lumber by a shipper on a side-track at his mill. This undertaking carried with it a duty on the part of the railway company to furnish safe and suitable cars for the purpose of being loaded, and this duty, by force of the agreement, extended not only to the shipper, but to the persons whom he employed to load the cars for him. While loading a car with lumber, from its defective condition, unknown to the shipper and his employees, the car, or a part of it, turned over, fell upon an employee and killed him. Undoubtedly the company was charged, under its contract, with the duty of furnishing cars which were safe for the purpose for which they were constructed to be used; that is, loading with lumber. This work the shipper could do by himself or his servants, and on proof that the loading was properly done, but that owing to a defect in the car a servant of the shipper was killed, this court held that the company was liable, if the defect was of a character discoverable by the exercise of ordinary care on the part of the company, and if the injured person could not, by the exercise of ordinary care, have avoided the consequences to himself. The principles ruled are clearly distinguished and sound. If we apply them to the facts of this case as shown by the record, at most it would be held that it was the duty of the railroad company to have transported the lumber in a car safe for unloading by the consignee, Campbell, and that this duty extended to Campbell and his servants, one of whom was the injured man; and if in properly unloading the car the defendant in error, being a servant, had been injured because of a defect in the car, discoverable by the company in the exercise of ordinary care, which injury the servant on his part could not have avoided by the exercise of ordinary care, the company would then have been liable for the injury. But the defendant in error was not injured in any attempt to *unload* the car. There was no defect in the car, so far as the evidence shows, which prevented it from being unloaded with safety. If there was a defect in the brake, this of itself did not render the car unsafe for unloading. The injury occurred to the defendant in error when, having gotten upon the car, he allowed it to be put in motion, undertaking to control the speed while running down a decline of the track.

The rule is well settled that even if an employee goes upon the track, or elsewhere upon the company's premises, not in the line or discharge of his duty, and without any invitation, express or implied, he is at most a mere licensee, to whom the company owes no duty to keep such place safe (3 Elliott, Railroads, § 1251); and further, if an employee works with a machine which he was not required to use, or uses a machine for a purpose for which it was not intended by the employer; or if one employed to do a designated kind of work or to work at a particular place voluntarily undertakes to do some other work, or goes to a place different from that assigned him by the contract of employment, he can not successfully insist that he is within the protection of the rule that the master must exercise ordinary care to protect him against injury. Id. § 1303. By a parity of reasoning, the servant of another seeking to recover damages from a railroad company for injuries sustained by him while shifting or moving a car on a siding, which had been left safely standing on such siding by the company for the purpose of being unloaded, is not entitled to recover, unless he shall make it appear that he was thus moving or shifting the car by authority from the company, or at least that the invitation extended to him to unload such car embraced such authority. Nor would he be entitled to recover, even if he had authority to so move the car, unless he made it appear that he could not by the exercise of ordinary care have avoided the consequences of the company's negligence.    See S., F. & W. Ry. Co. v. Booth, supra.

The undertaking of the railroad company, as we understand the evidence in this case, was to deliver the car on the side-track to be unloaded, but it was not to deliver on the side-track a car which utterly inexperienced persons might be at liberty to move down a decline to another place.    And for the purposes of this case we are entirely within the terms of the statute when we say that if the undertaking had been to deliver a car on the side-track for that purpose, and the person injured had been an employee, when he climbed on the end of the car and stood with one foot on the bumper and the other against the lumber with which the car was loaded, and while relying on the brake to

keep him in position as well as to stop the car, we know of no principle of law under which the injured person could have recovered damages under such circumstances. Had an employee placed himself in that position,—not upon, but on the outside of a heavily laden car,— and being so placed allowed the car to be put in motion to run down a grade, expecting to save himself by hanging on to the brake, which proved to be defective, the law would have forbidden a recovery, because unquestionably such injury would have been occasioned by his own negligence. To charge any person or corporation owning or operating a line of railroad, either with or without knowledge that a car, delivered under such circumstances as are found to exist here, would be moved before it could be unloaded; in the absence of any or all of its servants or agents who were accustomed to move cars, with the reckless act of a volunteer entirely ignorant as to the handling of cars, who apparently observed not the remotest precaution looking to his safety, is something which neither the law nor our sense of justice will permit. We sympathize with the unfortunate young man who thus lost his limb. More than sympathy on our part would work a gross injustice to others.

There are a number of exceptions made which, under the view we take of the case, it is not now necessary to pass upon, as another trial of the case is to be had. From a careful review of the evidence, and for the reasons heretofore given, the verdict rendered in this case is, in our opinion, contrary to law and the evidence, and we are therefore constrained to rule that the court erred in refusing to set it aside and to grant a new trial.

*Judgment reversed. All the Justices concurring.*