## HILLMAN v. GEORGIA RAILROAD AND BANKING CO.

1. A railroad company is bound to use extraordinary care and diligence to protect its passengers, while in transit, from violence, injury, or outrage and humiliation by third persons. This protection must be afforded by the conductor to the extent of all the power with which he is clothed by the company or by the law, and his failure to afford it, when he has knowledge that there is occasion for his interference, will subject the company to liability in damages.

2. Railroads doing business in this State are required by its statutes to furnish "equal accommodations, in separate cars, or compartments of cars, for white and colored passengers;" and it is also declared that "the officers or employees having charge of such railroad-cars shall not permit white and colored passengers to occupy the same car or compartment." Penal Code, §§ 526, 529.

3. The charge of the court did not accurately submit to the jury the law applicable to the case made by the pleadings and evidence, and entirely omitted any reference to the contention, made by the plaintiff in his pleadings and evidence, as to whether the conductor permitted a drunken and disorderly passenger to remain in the car where he had no right to be, and there to commit the acts complained of by the plaintiff.

Argued June 5,—Decided November 16, 1906.

Action for damages. Before Judge Roan. DeKalb superior court. January 20, 1906.

Jonas Hillman brought an action for damages against the Georgia Railroad and Banking Company, alleging as follows: On March 5, 1904, he was a passenger on the night train on defendant's road. On the train was a drunken ruffian and desperado by the name of Scruggs. When Scruggs boarded the train in Atlanta he was drunk, and the conductor saw him, knew his character, and was negligent in allowing him to board the train. When the train left Atlanta he began to curse and abuse the passengers, brandished a pistol, and continued his conduct until the train passed the station at Decatur. The conductor heard his language and saw his conduct, but did not arrest him or put him off the train. The conductor was notified of the dangerous and threatening conduct of Scruggs several times before the assault upon the plaintiff. Scruggs went into the car for colored people, where he had no right to be, and where the plaintiff (a colored person) rightfully was, quietly seated, having paid his fare to his destination. Without cause Scruggs began a violent assault upon the plaintiff, in sight of the

conductor.   He drew a pistol, cursed and threatened to shoot the plaintiff, and drove the latter from his seat and out of the car, all the while in the presence of the conductor, whom the plaintiff asked for protection, but who failed to protect him.   The defendant denied the substantial allegations of the petition.

The evidence for the plaintiff was sufficient to support the essential allegations, and to authorize a recovery.   On behalf of the defendant it was sought to show that Scruggs did not in fact commit all the acts alleged in the declaration.   Witnesses for the defendant, however, testified, that Scruggs had often ridden on the train previously in a drunken condition, but had never created a disturbance before; that he was somewhat drunk on board the train at the time of the occurrence complained of; that he wanted more liquor, and went into the car occupied by colored passengers, and was there for the purpose of trying to get a drink; that he was told that he had no business in there where negroes rode; that he said he intended to stay in there and get liquor to drink; and that he went back into the rear of the car which was being used for negroes that night, and sat with one of them.   The defendant's conductor testified, among other things, as follows: "I put all the negroes in the smoker and compartment car.   They occupied the whole car.   I used the front end of it, and the smoker part of it for the negroes. After leaving Atlanta I found Scruggs in the ladies' car in the rear of the negro car, and asked him for a ticket.   He said, 'Cap, go ahead, I will give it to you directly.'   . .   I went through and finished, and didn't see any more of him until after leaving Decatur.   . .   I found Scruggs again, and he was in the front end of the negro car.   That is the negro car next to the baggage car. I said to him, 'Scruggs, you will have to come into this other car.' He was then with two negroes, talking to them.   . .   I went on working the train and hurried back after leaving Clarkston, and I found him fussing in there.   I told these two negroes to get him out of the car.   I didn't have time to bother with him then.   I came back after leaving Clarkston and found him and one of the negroes in a seat in the smoker of the partition car, sitting in there. They were sitting on the seat together.   . .   Scruggs pulled out his knucks that way, and told this negro what a man he was.   Then he reached in the other hip pocket and pulled out his pistol and said, 'I aint scared of no damn man.'   I said 'Scruggs, you must

put up that gun. I am not going to have any trouble in here at all.' This negro that was sitting with him, I said to him to go in the other car. Scruggs had never ordered him in there at all. The negro got up and went on in the other car. Scruggs then asked me did I want the others out of there, and I said, 'No, I am using this car for the negroes to-night.' That time one or two negroes walked on through the other car. I think Jonas was about the second or third or fourth one, and he went on out with the other negroes. Scruggs said nothing to any of the negroes, only asked me did I want to get them out of there. I told him, 'No,' to let them alone, he had no right to bother them, and that I was using this car for the negroes. Then he got up, after the negroes went out, and said, 'If a darkey puts his head through that door I am going to shoot him.' About that time Jonas stuck his head in (I suppose it was Jonas), and he said: 'Give me my bundle.' I said, 'Keep your head back in there, and I will give you your bundle.' Scruggs had the gun in his hand, but he never pointed the gun or followed them. He simply held the gun in his hand . . I stayed with Scruggs until the train stopped at Stone Mountain. I went out on the steps, and he got off. He didn't put his gun up until he got on the steps. . . My flagman said that one of the negroes was complaining about not being protected, and I spoke to Jonas. Jonas did not speak to me; the flagman told me. I spoke to him. He asked me why I had not protected him. And I said I thought I did protect him. I asked him why he did not stay in there and help me, and he said: 'I was fixing to kill that man.'" The defendant company afterwards caused Scruggs to be prosecuted and fined for pointing a pistol at Hillman. He was also indicted for carrying concealed weapons, but on pleading guilty to the former indictment a nolle prosequi was entered as to the second.

The jury found for the defendant. The plaintiff moved for a new trial: (1) Because the verdict was contrary to law and the evidence. (2) Because the court charged as follows: "A conductor or other agent would not be justified in expelling from a train a passenger of known bad and turbulent character, so long as such person was not guilty of conduct seriously annoying or dangerous to other passengers." (3) Because the court charged as follows: "If a passenger is guilty of boisterous and improper conduct, but desists from it after request or remonstrance or command

of the conductor, the conductor would not be justified in expelling him from the train after he had so desisted." (4) Because the charge of the court did not cover or refer to the material issue in the case insisted on by the plaintiff, that Scruggs was in the car set apart for colored people, where he had no right to be, and there remained with the knowledge and permission of the conductor, who should have excluded him therefrom; that this was the proximate cause of the injury; and that the court made no reference to the law requiring separate cars for white and colored passengers on railroads. The motion was overruled, and the plaintiff excepted.

*Gleaton & Gleaton,* for plaintiff.

*Joseph B. & Bryan Cumming* and *M. A. Candler,* for defendant.

LUMPKIN, J. (After stating the facts.)

According to the evidence for the plaintiff, a passenger-car set apart for colored passengers, as provided by law, was invaded by a drunken person, who was guilty of violent conduct, terrorizing the occupants of the car, and compelling the plaintiff to leave his seat and ride on the platform, while the conductor remained idly by and neither protected the passengers nor arrested or ejected the offender. The evidence of the conductor, which is partly copied in the statement of facts, shows how mildly he dealt with the boisterous passenger. A railroad company is bound to use extraordinary care and diligence to protect its passengers, while in transit, from violence, injury, or outrage and humiliation by third persons. *Brunswick & Western R. Co.* v. *Ponder,* 117 *Ga.* 63. This duty applies whether the passenger is white or colored. "This protection must be afforded by the conductor to the extent of all the power with which he is clothed by the company or by the law, and his failure to afford it, when he has knowledge that there is occasion for his interference, will subject the company to liability in damages." *Richmond & Danville R. Co.* v. *Jefferson,* 89 *Ga.* 554. Conductors are clothed with police powers, and authorized to stop the train where the offense is committed, or at the next stopping-place, and eject a passenger who is guilty of disorderly conduct, or of using obscene, profane, or vulgar language, or gaming on the train; he may cause the offender to be detained and delivered to the proper authorities, for trial, as soon as practicable. Penal Code, § 902. "With or without a ticket, a passenger has no right to remain on a train and be carried when he is disorderly, or uses any

obscene, profane, or vulgar language." *Peavy* v. *Georgia R. Co.,* 81 *Ga.* 485. It is evident that the conductor's own testimony made but a scant excuse for not protecting the plaintiff from being threatened, humiliated, and placed in danger by a drunken passenger, if indeed it amounted to any excuse at all.

The presiding judge did not present the issues in this case with his usual ability and clearness. If, in the charge to the effect that a conductor would not be justified in expelling from the train a passenger of known bad and turbulent character, "so long as such person was not guilty of conduct seriously annoying or dangerous to other passengers," the word "seriously" is to be construed as qualifying both the words "annoying" and "dangerous," the charge was clearly erroneous. A passenger does not have to be in serious danger before the duty of the conductor to protect him arises. If that word is to be considered as qualifying the word "annoying" only, it is still of doubtful propriety. In Pittsburg, Cincinnati and St. Louis R. Co. *v.* Vandyne, 57 Ind. 576, it is said: "A railroad company may refuse to receive and carry as a passenger any person who is so intoxicated as to be disgusting, offensive, disagreeable or annoying, as long as he continues in that condition, though he may have purchased a ticket entitling him to passage. Slight intoxication, such as would not seriously affect the conduct of the passenger, will not justify a railroad company in refusing to receive and carry him." Here the word "seriously" is used with respect to the effect on the conduct of the intoxicated passenger, not as holding that his conduct must be seriously annoying or dangerous to other passengers. Of course mere trivial annoyance or such as would not arise to a reasonable person, but only to the supersensitive or fastidious, would not fall within the rule. It must be substantial, not trivial. The illustration of counsel for defendant of a child who cries, or a man who snores, is not apt. These are innocent, natural acts. The annoying conduct of a drunkard or rowdy is a voluntary wrong, or one resulting from his voluntary act. The writer can conceive, however, of snoring or even laughter, which might assume such abnormal proportions and become so loud and prolonged that the sleeper should be waked or the guffaw checked in the interest of other passengers, especially if the unusual noise resulted from drunkenness. On page 579 of the authority above cited it is said: "A person so drunk as to be likely

to violate the common proprieties, civilities, and decencies of life, has no right to passage while in that condition. The comfort and convenience of passengers must be protected, their opinions and feelings regarded, and proper decorum observed; and although, in a railroad passenger car, neither the highest breeding of the drawing-room, nor the fastidious delicacy of the parlor, is required, yet the behavior of all persons therein should be becoming to the place and general character of the passengers." See also Pittsburg & Connellsville R. Co. v. Pillow, 76 Penn. 510; Flint v. Norwich & N. Y. Co., 34 Conn. 554; Pittsburgh & Fort Wayne R. Co. v. Hinds, 53 Penn. 512; Murphy v. Union Ry. Co., 118 Mass. 228; Jencks v. Coleman, 2 Summer, 221. As to the care due to an intoxicated passenger who has been taken on board and is proceeding on his journey, see Milliman v. New York Central Ry. Co., 66 N. Y. 643; Brown v. Memphis & Charleston R. Co., 1 Am. & Eng. R. Cas. 247.

Railroads doing business in this State are required by its statutes to furnish "equal accommodations, in separate cars, or compartments of cars, for white and colored passengers;" and it is also declared, that "the officers or employees having charge of such railroad-cars shall not permit white and colored passengers to occupy the same car or compartment, and a violation of this section shall be a misdemeanor." Penal Code, §§ 526, 529. "The conductor and any and all employees on such cars have power to eject from the train or car any passenger who refuses to remain in such car or compartment or seat as may be assigned to him." Penal Code, § 528. See also Civil Code, § 2270 et seq. The plaintiff expressly alleged that Scruggs, a white passenger, was drunk and disorderly, that he went into the car set apart for colored people, where he had no right to be, and where the plaintiff was rightfully and quietly seated, and without any cause or provocation began a violent assault upon the plaintiff, threatening and cursing him; that he drew a pistol, threatened to shoot the plaintiff, and drove the latter out of his seat and out of the car; and that all of this was in the presence of the conductor, whom the plaintiff continued to ask to protect him, but who failed and refused to do so. This was denied by the defendant in its answer. In his charge to the jury the presiding judge made no reference whatever to the very material issue as to the place where the alleged assault took place, or whether Scruggs

was allowed to remain in a car where he had no lawful right to be, and to assault the plaintiff who was lawfully there, or there to commit the other acts complained of. Whether the plaintiff was lawfully in that car, and Scruggs was unlawfully there, and was permitted to remain there, and to so act as to drive the plaintiff from his seat or necessitate his leaving it, was a material issue in the case, and it was error to omit altogether any reference to it. If Scruggs had no right to be at that place, and the plaintiff did have such a right, the conductor should have dealt with the situation with the requirements of the law in view.

It is contended on behalf of the defendant in error, that the only damages claimed are based on the assault or threatened assault, and not upon a violation of the statute in reference to separation of races, the reference to the fact that Scruggs was in the car set apart for colored people being merely incidental. A reading of the allegations on this subject, which are in effect stated above, will show that they were not incidental, but material and substantial. In a later portion of the declaration, in setting out the alleged negligence of the defendant, it is stated, among other things, "that the defendant, in all the particulars aforesaid, failed to exercise extraordinary care to protect the person of the plaintiff, who was its passenger on its train; but exposed the person of the passenger to danger by its negligence."

The charge that "if a passenger is guilty of boisterous and improper conduct, but desists from it after request or remonstrance or command of the conductor, the conductor would not be justified in expelling him from the train after he had so desisted," is not an accurate, concrete statement of the law applicable to the facts disclosed by the evidence in this case. It omits entirely any consideration of the question as to whether the conductor made a request or remonstrance or command in due time and in proper manner, for the protection of other passengers. *Savannah, Florida & Western Ry. Co.* v. *Boyle,* 115 *Ga.* 836. Moreover, if Scruggs was in a place where he had no lawful right to be, and the conductor permitted him to remain there, with a pistol in his hand, to the exclusion of the passengers who had a right to be there, this could hardly be called a desistance from the improper conduct. . In Pittsburg, Fort Wayne & Chicago Ry. Co. *v.* Hinds, 53 Penn. 517, Woodward, C. J., in speaking of a conductor who failed to use proper efforts

to suppress riotous conduct on the train, said: "Nor did his exhortation to the passengers to throw the fighters out come up to the demands of the hour. He should have led the way, and no doubt passengers and hands would have followed his lead."

Judgment reversed. All the Justices concur.