434

*H. E. Coates, Lovejoy Boyer,* for plaintiff in error.
*M. H. Boyer, solicitor-general,* contra.

**23995. ATKINSON *v.* BIBB MANUFACTURING COMPANY *et al.***

DECIDED JANUARY 28, 1935.

*Hallie B. Bell, Grice & Grice,* for plaintiff.
*Jones, Johnston, Russell & Sparks,* for defendants.

MACINTYRE, J. Mrs. Carrie Atkinson brought suit for damages against Turman Mathis and Bibb Manufacturing Company, alleging; that she was employed by the defendant, Bibb Manufacturing Company, at piecework in the mill operated by it; that while she was at work Turman Mathis, who was agent and vice-principal of the mill, and boss or foreman in immediate charge and direction of its business, came to where she was working, and in an insulting and loud voice told her to "get those God damn bobbins down from there." She advised him that her work was that of "creeling the frame," that she was working by the piece, and that it was the work of someone else to move the bobbins, whereupon Mathis told her in a loud and insulting voice, "Get your God damn time." She replied, "You do not know who you are talking to, my face is as white as yours," and he replied, "Yes, I am talking to old lady Atkinson, God damn you;" whereupon she was discharged from the employment of said mill. While the foregoing words were being spoken, Mathis got out his pocket knife, opened it, and held it in his hand, and "his manner throughout was impolite, gruff, threatening, and oppressive, and intended to humiliate plaintiff." All of this happened within the sight and hearing of the other operatives and employees of the defendant, and she was publicly and insultingly discharged. It was alleged that the acts complained of were within the scope and in connection with the employment by, and the business of, the de-

fendant company. There were other allegations not necessary to a determination of the question presented. Both defendants filed separate demurrers, which were sustained, and the case was dismissed.

Mental pain and anguish, to be the basis of a recovery in damages, must be the consequences of a violation of a legal right or duty which is an actionable wrong. There may be damage to a person without legal wrong, but a legal wrong imputes damage. Actual perceptible damages are not indispensable to the foundation of an action, since the violation of a legal right or duty warrants a recovery of nominal damages, and, if the nominal damages may be recovered, then, in a proper case made, a recovery for mental pain and anguish may be grafted upon the recovery of actual or nominal damages. "The law protects the person and the purse. The person includes the reputation. *Johnson* v. *Bradstreet Co.,* 87 *Ga.* 79 (13 S. E. 250). The body, reputation and property of the citizen are not to be invaded without responsibility in damages to the sufferer." *Chapman* v. *Western Union Telegraph Co.,* 88 *Ga.* 763 (15 S. E. 901, 17 L. R. A. 430, 30 Am. St. R. 183). But outside these protected spheres, the law does not yet attempt to guard the peace of mind, or the happiness of every one by giving recovery of damages for mental anguish for a violation produced by a mere moral wrong. The mere cursing of another (not amounting to slander) is not a violation of a legal right or duty capable of enforcement by process of law. The civil law does not undertake to redress psychological injuries unsupported by actual or nominal damage. The defendant owes the plaintiff the moral obligation not to curse her, but this is too delicate and subtle an obligation to be enforced in the rude way of getting money compensation for a violation of this mere moral obligation. Where the mental pain and anguish result from a wanton and wilful wrong which is a violation of a legal right or duty owed to the plaintiff although unaccompanied by a physical injury or monetary loss, recovery can be had for mental pain and anguish; but, if the mental pain and anguish result from mere violation of a mere moral obligation, there can be no recovery. We think this case comes within the latter classification, and that it was properly dismissed on general demurrer.

*Judgment affirmed. Broyles, C. J., concurs. Guerry, J., dissents.*

GUERRY, J., dissenting. · The controlling question in this case, as agreed upon by counsel, is whether or not a plaintiff may recover for wounded feelings, unaccompanied by physical injury, where the wounded feelings and mental pain and anguish are caused by a wilful and intentional act as distinguished from a negligent act. As a general rule, most cases involving mental pain and anguish as an item of damage arise where there is an accompanying damage to person, reputation, or property, or breach of contract. Our courts are committed to the principle that there can be no recovery for mental suffering alone not accompanied by actual damage to person, reputation or property where the damage complained of arises because of acts of negligence only. *McNeal* v. *Seaboard Air-Line Railway Co.*, 23 *Ga. App.* 473; *Chapman* v. *Western Union Telegraph Co.*, supra, and cit.

It is also well established that "while mental suffering, unaccompanied by injury to purse or person, affords no basis for an action predicated upon wrongful acts merely negligent, yet such damages may be recovered in those cases where the plaintiff has suffered at the hands of the defendant a wanton, voluntary, or intentional wrong the natural result of which is the causation of mental suffering and wounded feelings." *Dunn* v. *Western Union Telegraph Co.*, 2 *Ga. App.* 845 (3) (59 S. E. 189), and cit. It is true that in the *Dunn* case it was stated that every public service company owes to members of the general public who transact business with it a safe and decent access to the place where such transactions are to be had, and that they are to be accorded decent treatment. The essential element in every tort is the existence of a duty and the violation of that duty. It is the violation of a legal right as distinguished from a moral right. It is the violation of a positive and active rather than a passive and negative duty. "Conduct, even though improper and causing harm to another, does not constitute a tort unless legal as distinguished from a moral right is violated, or duty disregarded." 62 C. J. 1097. "It is the omission or negligent discharge of legal duties only which comes within the sphere of judicial cognizance. For withholding relief from the suffering, for failure to respond to the calls of worthy charity, for faltering in the bestowment of brotherly love on the unfortunate, penalties are found, not in the laws of men but in the Higher law, the violation of which is condemned by the voice of conscience, whose sen-

tence of punishment for the recreant act is swift and sure." Union Pacific R. Co. *v.* Cappier, 66 Kan. 649 (72 Pac. 281, 69 L. R. A. 513).

Is the unjustified, wilful, and wanton and public cursing of one by another, intended to humiliate and embarrass, an invasion of his legal rights, or is it only an invasion of his moral right? It seems to the writer that the right of a person to be secure in his freedom from unjustified and unwarranted *public* cursing and insult by words is as valuable a legal right as is the right to be free from physical assault or trespass on person, property or reputation, or the violation of a contractual right. The law itself recognizes that a private insult or a humiliation inflicted by words alone may justify the infliction by the person so insulted or abused of an assault and battery not disproportionate to the insult offered. Penal Code, § 103. This, I infer, is for the reason that the law recognizes the fact that the person so cursed, abused, or insulted has had some right invaded, which invasion he may resist even to the extent of a retaliation by a battery, provided the battery is not disproportionate to the insult offered. The Penal Code, § 387, provides that "Any person who shall, without provocation, use to or of another, and in his presence, opprobrious words or abusive language, tending to cause a breach of the peace, or in a like manner use vulgar, obscene, or profane language in the presence of a female, . . shall be guilty of a misdemeanor." 1 Cooley on Torts (4th ed.), 8, defines "a legal right" as "something which the law secures to its successors by requiring others to observe it, and to abstain from its violation." In the *Dunn* case, supra, it was said: "The gist of the action is not the failure or refusal of the telegraph company to transmit a message tendered to it, but the alleged disrespectful, humiliating, and insulting treatment by its agent of a member of the general public, lawfully in its office on business with the company." The only damage alleged is the wounded feelings. It was held that every public service corporation owes to such members of the general public as have occasion to transact business with it the duty of affording to them a safe and decent access to such office or place of business. It must see that members of the general public transacting business with it are accorded respectful treatment. For a wilful, as distinguished from a negligent, invasion of this right such company is liable although no actual damage is suffered other

than mental pain and wounded feelings. Such damage may in the very nature of things be just as proximately and naturally a consequence of the defendant's wrong as any other damage; nor is the amount of damages any more conjectural than where damages are awarded for physical pain and suffering. The arbitrary rule, that is, that for damage occasioned by mental pain and suffering there can not be a recovery except in case of actual physical injury or damage to person, reputation, property or breach of contract, is generally applied only in those cases where the injury is the result of mere neglect. *Chapman* v. *Western Union Telegraph Co.*, supra, is the leading case on this question. This doctrine has not been extended in its application to those intentional injuries of which insult, humiliation, and mental suffering are the natural consequences. As was said in Spade *v.* Lynn & Boston R. Co., 168 Mass. 285 (47 N. E. 88, 38 L. R. A. 512, 60 Am. St. R. 393), "It is hardly necessary to add that this decision does not reach that class of cases where an intention to cause mental distress or to hurt the feelings is shown or reasonably inferred."

It can be seen that the question to be decided in this case is whether or not the wrong complained of was a moral wrong or a legal wrong. Moral wrongs are not compensable in our courts; they belong to a different jurisdiction. Many moral wrongs may also be legal wrongs for which damages may be awarded. Only the law can prevent such interference by others as would deprive it of all the qualities of individual possession. Individual rights, liberty, and property are born of legal restraints; by means of these every man may be protected within the prescribed limits; when without them possessions must be obtained and protected by cunning or force. In the domain of speculation or morals a right may be whatever ought to be respected, but in law that only is a right which can be defended before legal tribunals.

Although contrary to the holding in a number of States, the Supreme Court of this State, in *Pavesich* v. *New England Life Insurance Co.*, 122 *Ga.* 190 (50 S. E. 68, 69 L. R. A. 101, 106 Am. St. R. 104, 2 Ann. Cas. 561), held that the "right of privacy is embraced within the absolute rights of personal security and personal liberty," and "Personal security includes the right to exist and the right to the enjoyment of life while existing, and is invaded not only by a deprivation of life, but also by a deprivation of

those things which are necessary to the enjoyment of life, according to nature, temperament and lawful desires of the individual." It was further said that "the constitution declares that liberty of speech and of press must not be abused; and the law will not permit the right of privacy to be asserted in such a way as to curtail or restrain such liberties. The one may be used to keep the other in lawful bounds, but neither can be lawfully used to destroy the other." The publication of a picture of a person without his consent as a part of an advertisement, for the purpose of exploiting the publisher's business is a violation of the right of privacy of the person whose picture is reproduced, and entitles him to recover without proof of special damage. See also *Bazemore* v. *Savannah Hospital,* 171 *Ga.* 257 (155 S. E. 194). By analogy it might be said that the right to be free from public insult from another because. of profane and abusive language is as valuable a right in contemplation of the law as is the right of privacy. In the *Pavesich* case, supra it was further said: "It could be said with great force that as to certain matters the individual feels and knows that he has the right to exercise the liberty of privacy, and that if the law will not protect him against invasion, the individual will, to protect himself and those to whom he owes protection, use those weapons which nature has provided him, as well as the ingenuity of man has placed within his reach. Thus the peace and good order of society would be disturbed by each individual becoming a law unto himself to determine when and under what circumstances he should avenge an outrage which has been perpetrated upon him."

That opprobrious words and abusive language is an insult is recognized by our Code. It may justify an assault and battery. It may be the basis of a criminal indictment. 1 Cooley on Torts, § 6, says: "When the act or neglect which constitutes a public wrong is specially and peculiarly injurious to an individual, and obstructs him in the enjoyment of some right which the law has undertaken to assure, the offender may be subject to a double liability; he may be punished by the State, and he may also be compelled to compensate the individual." I am not unmindful of the fact that this provision of the law is to be exercised cautiously and that the statute itself makes the exception that such cases may not be inquired into by any court except upon presentation made or indictment found by the grand jury. In 1 Cooley on Torts, § 19, it is

said: "Words may be thoughtlessly spoken; they may have indicated to the person threatened nothing but momentary spleen or anger, though when afterwards reported by witnesses they seem to express deliberate malice and purpose to injure. Even when defamation is complained of, the law is very careful to require something more than expressions of anger, reason, reproach or contempt before it will interfere; justly considering that it is safer to allow too much liberty than to interpose too much restraint." The law has been jealous as to those who would interpret every seeming slight or vexatious expression as a cause of action, and is and should be slow to admit that such constitutes a cause of action. Profane, obscene, and vulgar words are within certain limits made criminal acts. In the present case, unless the words used and the manner and purpose of their use at the time of the discharge, constituted such an invasion of the plaintiff's legal rights, they afford no basis for a cause of action. Words never constitute an assault, and for that reason the facts alleged do not show that the defendant made any assault upon the plaintiff. Did the wilful public cursing, intended to humiliate one before her associates, violate any legal right of such person? Mr. Justice Story, in Well v. Portland Mfg. Co., 3 Sumner, 189, said: "I can very well understand that no action lies in the case where there is damnum absque injuria; that is, where there is a damage without any wrong or violation of any right of the plaintiff. But I am not able to understand how it can correctly be said in a legal sense that an action will not lie even in a case of wrong or violation of a right, unless it is followed by some perceptible damage which can be established as a matter of fact; in other words, that injuria sine damno is not actionable. On the contrary, from my earliest reading I have considered it laid up among the very elements of the common law, that *wherever there is a wrong there is a remedy to redress it* (italics ours); that every injury imports a damage in the nature of it; and if no other damage is established, the party injured is entitled to a verdict for nominal damages. . . Actual, perceptible damage is not indispensable as the foundation of an action. The law tolerates no farther inquiry than whether there has been the violation of a right. If so, the party injured is entitled to maintain his action for nominal damages in vindication of his right." There may be a damage to a person without a legal wrong. But a legal wrong imports damage. In *National*

*Exchange Bank of Augusta* v. *Sibley,* 71 *Ga.* 726 (4), it was said: "There may be damage without injury, where there has been no violation of any right of the party complaining or no breach of duty to him, but where there has been a breach of duty as to him, the doctrine of damnum absque injuria does not apply. In such cases, if no actual damage is shown, nominal damages may be recovered." See Code of 1910, § 4507; *Georgia Railway & Power Co.* v. *Endsley,* 167 *Ga.* 439, 442 (145 S. E. 851, 62 A. L. R. 256).

There are certain cases decided by the Supreme Court of South Carolina,—Rankin v. Sievern &c. R. Co., 58 S. C. 532 (36 S. E. 997), and Brooker v. Silverthorne, 111 S. C. 553 (99 S. E. 330, 5 A. L. R. 1283),—which at first reading seem to be contrary to the opinion that I hold. In each of these cases the alleged injury consisted, as mainly contended by the plaintiff, in the alleged threats which were made against them. In the Brooker case it was said, "To render actionable a threat causing fear, it must be of such a nature and made under such circumstances as to affect the mind of a person of ordinary reason and firmness so as to influence his conduct, or it must appear that the person against whom it was made was peculiarly susceptible to fear and that the person making the threat knew and took advantage of the fact that he could not stand as much as an ordinary person." In that case a threat was made over the telephone, accompanied by profanity. No allegation was made that such profanity and threat was heard by others or that it was intended to publicly humiliate. It does not appear that in South Carolina there is made, as in Georgia, a distinction between a tort inflicted by negligence and a wilful tort. Then, too, a threat does not constitute an assault, because, among other reasons, it only promises a future injury and gives ample opportunity to provide against it. A threat does not, except where palpably so intended, cause humiliation, nor, as set forth in the Brooker case cited above cause any actionable injury except under certain circumstances. Cursing and abusive language may not in every circumstance violate a legal duty and thus support a cause of action, but in a case where such conduct is intended to publicly intimidate and embarrass the person so cursed and abused, and the circumstances surrounding the transaction show a wilful and wanton intent so to insult and humiliate such person, a legal right is invaded and a legal duty breached.

I am mindful that we should be slow to hold that hot words, though profane, uttered in a moment of stress without any apparent intention to wilfully humiliate, are such as should be the basis of an action for damages for alleged wounded feelings; for I recognize the principle that "it is safer to allow too much liberty than to interpose too much restraint." I do feel, however, that it would be improper to hold that under no circumstances is it an invasion of legal right to curse and abuse another if no physical injury or actual damage occurs. If the facts as alleged in the present petition occurred, and occurred publicly, and were intended to insult, embarrass, and humiliate the plaintiff, a cause of action for nominal damages is at least set forth. I think these were questions for a jury, and that the court erred in sustaining the general demurrer.