40529.    BROWN v. COLONIAL STORES, INC.

Decided July 10, 1964—Rehearing denied July 30, 1964.

*Charles W. Anderson, Oze R. Horton, Melvin Pazol,* for plaintiff in error.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Barry Phillips, Jefferson Davis, Jr.,* contra.

RUSSELL, Judge. With some difficulty the allegations of the pleadings may be construed to infer that the plaintiff was a customer in the defendant's store; that on October 6 a check with the plaintiff's name signed to it which according to the contention of the manager of the store was presented and cashed by plaintiff's son at a time when plaintiff was present in the store was returned for insufficient funds, and that the next time the plaintiff came into the store the manager asked her whether she wrote the check. She did not at first deny writing the check, but only said she did not cash it. He then asked her whether she had money in the bank and she agreed that she did not have money in the bank, or at least not in an account which would have covered the check in question: "No, I only write personal checks." The manager then said plaintiff was in the store when he cashed the check, and the plaintiff again evaded a direct denial, according to her quoted words, and said merely that she was not "in the store with my son October 6," the date of the check. Thus, the plaintiff's own account of the conversation puts her in an ambiguous position of appearing to evade forth-right answers to questions naturally raised by the fact that the check had not been honored in the ordinary course of business by the drawee. It is hard to determine whether the plaintiff intended for the manager to understand that the check was a forgery, or that she had written the check but had not cashed it. She had not made her position clear. The manager then told her he intended to have the signature on the check compared with the signature of the maker on file at the bank. Only this last sentence can be made the subject of inquiry, because the plaintiff freely admitted she had no funds in the bank out of which the check could be paid. Since she had refused to state whether she did in fact *write* the check in answer to his question, the store manager's statement that he would find out by

having a comparison of signatures made seems a natural reaction under the circumstances.

This conversation is alleged to give rise to a right of action because it was a "breach of [plaintiff's] freedom, liberty, movement, privacy, and was an unlawful arrest." The petition does not allege a cause of action for unlawful arrest because no unlawful detention is alleged. *Westberry v. Clanton*, 136 Ga. 795 (72 SE 238).

It does not allege either that the words spoken were per se defamatory, or that they were subject to two meanings, one of which was intended by way of innuendo to be defamatory, nor does it allege that the defendant corporation directed or authorized its agent to speak the words in question. The petition hence does not set forth a cause of action for a breach of duty to refrain from slandering the plaintiff or for slandering her.

Neither is an actionable violation of the right of privacy alleged. "Personal liberty includes not only freedom from physical restraint, but also the right 'to be let alone', to determine one's mode of life, whether it shall be a life of publicity or of privacy, and to order one's life and manage one's affairs in a manner that may be most agreeable to him so long as he does not violate the rights of others or of the public." *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (5) (50 SE 68, 69 LRA 101, 106 ASR 104, 2 AC 561); *Gouldman-Taber Pontiac, Inc. v. Zerbst*, 213 Ga. 682 (2) (100 SE2d 881). It was said in *Zerbst* that one who seeks employment, and who obtains credit, and who trades with the proprietor of an automobile repair shop, naturally exposes herself to the ordinary hazards of life, including the fact that even though she rightfully refuses to pay a bill the creditor may complain to her employer, and that this is no invasion of privacy. Likewise, one who trades in a retail store, and whose name is signed to a check returned for insufficient funds, is exposed to questioning about the check as one of the normal hazards of modern mercantile trading, whether or not she wrote the check in the first instance, and particularly if the check was cashed by a member of her family. No "right of privacy" has been invaded.

The duty of a proprietor to exercise ordinary care to prevent

injury to an invitee on his premises arises when "there is any reasonable apprehension of danger to such a customer." *Moone v. Smith,* 6 Ga. App. 649 (1) (65 SE 712), a case cited by the plaintiff in error but involving a physical injury to a customer in the midst of a general fight in the establishment, and not otherwise applicable. The duty of the proprietor may rest on either of two principles. It may itself be negligent by ordering its employee to do something which injures the plaintiff or by negligently hiring an employee after such characteristics become known to it. No such facts are alleged here; the defendant is liable, if at all, under the doctrine of respondeat superior. "Every person shall be liable for torts committed by his wife, his child, or his servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary." *Code* § 105-108; *Southern R. Co. v. Morrison,* 105 Ga. 543, 547 (31 SE 564). So considering the case we must ignore the fact that the defendant is a proprietor and consider the allegations as though suit had been filed against the employee in his individual capacity, or against any private person where the same confusion obtained concerning the authorship of the check. A, who has cashed a check with B's name on it and had it returned for lack of funds, informs B in effect that he understands B to maintain the check is a forgery; that he, A, does not believe it is a forgery, and that he is going to take it down to the bank and have the signatures compared. He does this in the vicinity of other people who may have overheard the conversation, and who may form the conclusion therefrom that in B's opinion A is the maker of the check, or at least that B is not convinced that A is not the maker of the check. A considers this insulting. It is not, however, as insulting as to say to a woman: "I am talking to old lady Atkinson, God damn you," *Atkinson v. Bibb Mfg. Co.,* 50 Ga. App. 434 (178 SE 537), or stating to another in the presence of the plaintiffs that "he was going to kill the God damn sons of bitches," *Buice v. Citizens &c. Nat. Bank,* 71 Ga. App. 563 (31 SE2d 414). "No Georgia cases are cited and we have been able to find none which go so far as to hold that abusing, insulting, harrowing and cursing an individual constitutes a wrong cognizable under

the law of torts in the State of Georgia." Johnson v. General Motors Acceptance Corp., 228 F2d 104. Since no actionable tort was committed such that the plaintiff might recover from the speaker, he cannot recover against the employer. *Miller v. Friedman's Jewelers,* 107 Ga. App. 841 (131 SE2d 663). Every cited case the court has examined in which recovery has been allowed rests on the theory that the proprietor is liable for the *tortious* misconduct of the employee, not on conduct falling short of a tort. In *Colonial Stores, Inc. v. Coker,* 74 Ga. App. 264 (39 SE2d 429) and similar cases the tort might be one for which the employer was not itself liable as a corporation, but it was a tort for which the employee could have been sued directly regardless of the duty of the proprietor. No case has gone so far as to hold that the employer may be liable for conduct of the employee which is not, as to the latter, cognizable as a breach of a private duty owing the plaintiff by the actor, no negligence being shown as against the employer itself.

Cases cited to our attention on the question of the duty of a proprietor to protect others against insults from company employees include *Southern R. Co. v. Chambers,* 126 Ga. 404 (4) (55 SE 37, 7 LRA (NS) 926); *Hillman v. Georgia R. & Bkg. Co.,* 126 Ga. 814 (56 SE 68, 8 AC 222); *Cole v. Atlanta & West Point R. Co.,* 102 Ga. 474 (31 SE 107) and others involving railroad or telegraph companies. We do not of course make a broad decision that insults by employees are not actionable; but, in consideration of the problem, both the public interest with which the defendant is invested and the wilful character of the act committed against the plaintiff must be considered. As to the former, the distinction was made the basis of the holding in *Dunn v. Western Union Tel. Co.,* 2 Ga. App. 845, 849 (59 SE 189): "A telegraph company is a private corporation performing a public duty; and whether it is a common carrier, a bailee, or a person engaged in business sui generis, is immaterial. It is a public-service company, one engaged in a business of such nature as to clearly distinguish it from those purely private persons and corporations who may conduct their own business in their own way. All such corporations, on account of the interest which the public has in the manner in which their busi-

ness is conducted as well as on account of the special franchises enjoyed by them, must observe certain rules of dealing with the public." After pointing out that government imposes on institutions impressed with a public interest the duty of acting impartially to all, Judge Powell adds (p. 851), "The fact that the right of respectful treatment, while attempting to do business with a public-service company, follows as the natural sequence from the right to be served impartially and at all reasonable times, seems to render the citation of authority as to the existence of this right of respectful treatment unnecessary." It follows that cases involving this class of corporations stand within different parameters from those which involve an ordinary proprietorship.

The petition also differs from *Southern Grocery Stores, Inc. v. Keys*, 70 Ga. App. 473 (28 SE2d 581) and like cases which allege the commission of a tort (slander) by the use of words with an obvious defamatory meaning, and from cases like *Hazelrigs v. High Co.*, 49 Ga. App. 866 (1) (176 SE 814), where the act is alleged to be wilful and wanton rather than merely negligent.

"In the absence of allegations of physical injury or of malicious, wanton, voluntary and intentional wrong, the plaintiff is not entitled to recover for mental pain and suffering, nervousness, upset, anxiety, embarassment and humiliation." *Shook v. Southern R. Co.*, 101 Ga. App. 128 (113 SE2d 155). See also *Stephens v. Waits*, 53 Ga. App. 44 (184 SE 781) and citations.

The petition alleges neither misconduct amounting to a tort nor a wilful and intentional attempt to humiliate and embarrass the plaintiff, and damages are sought for mental suffering only. It follows that no cause of action is set out.

*Judgment affirmed. Nichols, P. J., Frankum, Jordan and Pannell, JJ., concur. Eberhardt, J., concurs specially. Bell, P. J., and Hall, J., concur with this special concurrence. Felton, C. J., dissents.*

EBERHARDT, Judge, concurring specially. I am in full accord with the conclusion that there was no actionable wrong in the inquiry made by the store manager of the plaintiff as to whether plaintiff had signed the check, nor, when she denied it, in his statement that he would have the signature checked at the bank.

However, I can see no basis for any rule that places one standard upon the operator of a public utility corporation and another upon a private corporation with reference to this situation. I think the customer of each is entitled to the same civil and respectful treatment and that each is under the same duty to accord it. As to an invitee I think the standard is ordinary care on the part of anyone who is in the position of having extended the invitation.

Nor do I think the cases holding that, as to the person doing the cursing, insulting, etc., there is no cause of action for mental anguish suffered by the party to whom it is addressed can be said to bar an action against an employer for the kind of conduct by an employee dealt with in *Sims v. Millers, Inc.*, 50 Ga. App. 640 (179 SE 423); *Southern Grocery Stores, Inc. v. Keys*, 70 Ga. App. 473 (28 SE2d 581) or *Colonial Stores, Inc. v. Coker*, 74 Ga. App. 264 (39 SE2d 429), and similar cases. As I view it, the conduct of the store manager here falls far short of coming within the ambit of those cases; it was neither insulting, harrowing nor abusive.

I may add that I find it difficult, if not impossible, to reconcile the results in cases like *Sims*, *Keys* and *Coker* with *Behre v. National Cash Register Co.*, 100 Ga. 213 (26 SE 986). They stem from *Cole v. Atlanta &c. R. Co.*, 102 Ga. 474 (31 SE 107), which I think also conflicts with *Behre*.

I am authorized to say that Presiding Judge Bell and Judge Hall concur in this view.

FELTON, Chief Judge, dissenting. The words alleged to have been spoken by the defendant's agent *raised the question whether the plaintiff issued and cashed a check without having sufficient funds in the bank to pay the check upon presentation.* The words obviously imply that somebody cashed the check at the defendant's store on a certain date; that the plaintiff was in the store on that day; that the check had been presented to the bank for payment and that payment had been refused. The words alleged to have been used did not specifically charge the plaintiff with the crime of cashing a check without funds in the bank to cover it *but they raised this question in the minds of those who heard it,* and after stating a case against the plaintiff

by way of questions pointing toward the conclusion that she was in the store the day the check was cashed and that she signed the check, closed his case against the plaintiff by saying that he would compare the signature on the check with the plaintiff's signature at the bank. This was in the presence of third persons, *which was not at all necessary. A private conversation would have sufficed. In such a situation, those hearing the conversation would never know whether the plaintiff was guilty of giving a bad check or not as they would not likely follow up the investigation.* If the plaintiff was innocent of giving a bad check, *as she alleges she was,* the conduct of the agent *violated the duty of the defendant not to insult her as an invited customer while on the defendant's premises.* It is the duty of a railroad company to protect its passengers against insults from the company's employees. *Southern R. Co. v. Chambers,* 126 Ga. 404 (4) (55 SE 37) ; *Hillman v. Georgia R. & Bkg. Co.,* 126 Ga. 814 (56 SE 68) ; *Cole v. Atlanta & West Point R. Co.,* 102 Ga. 474 (31 SE 107) ; *Richmond & Danville R. Co. v. Jefferson,* 89 Ga. 554 (16 SE 69, 17 LRA 571, 32 ASR 87). The case of *Moone v. Smith,* 6 Ga. App. 649 (65 SE 712) held that this same duty is owed by proprietors of other businesses to invited customers on their premises, the only difference being that the rule of diligence is the exercise of reasonable care and diligence, rather than the extraordinary care required of carriers. This principle has been applied in subsequent cases to recognize a right of action for breach of this duty. *Southern Grocery Stores, Inc. v. Keys,* 70 Ga. App. 473 (28 SE2d 581) ; *Sims v. Miller's, Inc.,* 50 Ga. App. 640 (179 SE 423); *Lemaster v. Millers,* 33 Ga. App. 451 (126 SE 875); *Hazelrigs v. High Company,* 49 Ga. App. 866 (176 SE 814); *Colonial Stores, Inc. v. Coker,* 74 Ga. App. 264 (39 SE2d 429). The case of *McKown v. Great A. & P. Tea Co.,* 99 Ga. App. 120 (107 SE2d 883) is distinguishable as to the corporation because the conduct of the corporation's agent was not on the premises of the corporation. We find no cases exactly in point on the question involved but we think the case is controlled by the principle that an invitee in such a case as this *is protected from insult and injury by the imposition of a duty of the invitor to protect the invitee from such conduct.*

There is a line of cases, many of which cite *Chapman v. Western Union Tel. Co.*, 88 Ga. 763 (15 SE 901, 17 LRA 430, 30 ASR 183), which hold that there can be no recovery in Georgia for mere mental pain and anguish alone. The *Chapman* case, however, involved a situation where the causative act was one of mere negligence, rather than a wilful or wanton tort, such as is involved in the instant case. Furthermore, the *Chapman* case recognized that Code § 3067 (the present § 105-2003), by not enumerating all of the class of torts in which "the entire injury is to the peace, happiness, or feelings of the plaintiff," obviously does not mean to create new torts, or change the law of damages, but only to declare the pre-existing law. *Chapman v. Western Union Tel. Co.*, p. 775, supra, and citations. The pre-existing law—the common law rule which is still in effect in this State—is well stated in *Dunn v. Western Union Tel. Co.*, 2 Ga. App. 845 (3) (59 SE 189), as follows: "While mental suffering, unaccompanied by injury to purse or person, affords no basis for an action predicated upon wrongful acts merely negligent, yet such damages may be recovered in those cases where the plaintiff has suffered at the hands of the defendant a wanton, voluntary, or intentional wrong the natural result of which is the causation of mental suffering and wounded feelings." See also *Young v. Western & A. R.*, 39 Ga. App. 761 (148 SE 414); *Atlanta Hub Co. v. Jones*, 47 Ga. App. 778 (171 SE 470); *Anderson v. Buice*, 69 Ga. App. 265 (25 SE2d 96) (reversed in *Buice v. C. & S. Nat. Bank*, 71 Ga. App. 563, 31 SE2d 414, on the grounds of insufficient proof). In *Miller v. Friedman's Jewelers*, 107 Ga. App. 841 (131 SE2d 663), it was not alleged that the acts complained of were the proximate cause of the dizziness, weakness and fear of another heart attack. The profanity and boisterous language cases are not in the category of the instant case but even they have a very tenuous validity, especially those involving situations in which such language is directed at the complaining parties and not merely in their presence.

The questioning of the integrity of the invitee *under the facts alleged* was a tort from which the law was designed to protect the plaintiff, and as against a general demurrer the petition stated a cause of action for the alleged wrong set forth above.

The majority is in error in holding as a matter of law: (1) that the allegations of the petition show that plaintiff was not insulted; (2) that there was no allegation of physical consequence of the conduct of the employee (it was alleged that it made her sick); (3) that the action is based on negligence. Every allegation of misconduct is one of wilfulness, in which case no allegation of physical injury is necessary. For all of these reasons I dissent from the judgment of the majority.