Smith *et al., vs.* Overby.

---

## SMITH *et al., vs.* OVERBY.

30 241
114 958

1. Although a charge be literally correct, still, if the language was calculated to mislead the jury upon a material point, a new trial may be awarded.

2. The doctrine of damages discussed.

Case, in Newton Superior Court. Tried before Judge RICE, at September Term, 1859.

This was an action on the case brought, in the first place, by William H. Smith, against Benjamin H. Overby, a physician, to recover damages for the neglect and want of care,

skill and attention of defendant in delivering plaintiff's wife of a child, defendant being called in as an accoucheur, or man-midwife, on said occasion.

The defendant pleaded the general issue.

Plaintiff afterwards amended his declaration by making his wife, Harriet D. Smith, a co-plaintiff, and alleging that defendant injured the said Harriet D. by gross negligence, inattention and unskillful treatment in and about the delivering the said Harriet D. of a child, and by cutting and lacerating the child with a jack-knife, while in the womb, and before its birth, and other wrongs and injuries done to said Harriet D., etc., and causing her great mental and bodily suffering, and destroying her health and peace of mind, to the damage of the plaintiffs twenty-five thousand dollars.

The parties submitted their testimony; after which, and argument by counsel, the Court charged the jury, who returned a verdict for the defendant. Whereupon, counsel for plaintiffs moved for a new trial, upon the following grounds:

1st. Because the verdict was contrary to law and evidence.

2d. Because the verdict was contrary to the charge of the Court.

3d. Because the Court erred in charging the jury, that the damages must be confined to the actual injuries sustained by Mrs. Smith in her person.

4th. Because the Court erred in charging the jury, that in this case the plaintiffs are not entitled to recover what is called exemplary or vindictive damages.

5th. Because the Court erred in charging the jury, that plaintiffs are not entitled to recover damages by way of example or punishment.

6th. Because the Court erred in charging, that if the necessity existed, and no better instrument was at hand or could be procured in time, then, from the necessity of the case, defendant might use the knife, and that the physician is not responsible for any error in judgment on such occasion; such error arising from the peculiar circumstances of the case, and not from want of proper care or skill.

The presiding Judge refused the motion for a new trial, and annexes to his decision, overruling the motion, the following as a portion of his charge, necessary to a proper understanding of the grounds of the motion for a new trial, and of the reasons of the Court for refusing the said motion, viz:

The Court, after a statement of the pleadings, charged the jury, among other things, as follows:

"This action is not brought for any injury sustained by the husband, but is brought by the wife, Mrs. Smith, for the injury which she alleges she sustained on the occasion of her accouchement. The husband, William H. Smith, is joined in the action, but the damages are to be given for the injury sustained by the wife, Mrs. Harriet D. Smith. To sustain the plaintiff's action, the plaintiffs must prove that Mrs. Harriet D. Smith sustained injuries as alleged *in their declaration,* and that those injuries were attributable to a want of a reasonable and proper degree of care and skill in the defendant's treatment on the occasion mentioned in the plaintiff's declaration. The profession of the physician is one of the learned professions; and in regard thereto, as in all professions, in the practice of which, learning and skill are required, the rule of law is, that every person who enters into a learned profession undertakes to bring to the exercise of his profession a reasonable degree of care and skill. He does not undertake to use the highest possible degree of skill; for there may be persons who, from having enjoyed a better education and greater advantages, are possessed of greater skill in their profession; but he undertakes that he will bring a fair, reasonable and competent degree of skill. The care and skill required of him ought to have reference to the nature of the business he is called on to perform. To embody these principles so as to make them more immediately applicable to the case before us, the Court charges you, that a physician called on to deliver a woman in labor, does not undertake that he will, at all events, safely deliver the woman of her child, without injury to the mother or child; but he undertakes that he will bring to the work a fair, reasonable and competent degree of care and skill in reference to the operation to be performed. Again: Of necessity, the physician acting as an accoucheur must judge from the circumstances attending the accouchement the necessary treatment of the case, and the operation, if any, necessary to be performed to accomplish a delivery. He is called in for the very purpose that by his skill he may judge what is necessary to be done, and by his skill to do it; and he is not responsible for an error in judgment on such occasion, if such error arises from the peculiar circumstances of the case, and not from want of

Smith *et al.*, *vs.* Overby.

proper care or competent skill on his part.    As to the use of the knife, the Court charges you that if the necessity existed, and no better instrument was at hand, or could be procured in time, then, from that necessity, the defendant might use the knife."

The Court further charged the jury, among other things, as to damages: " That if Mrs. Smith sustained any injury from want of proper care or competent skill on the part of the defendant, then the plaintiffs are entitled to recover damages for the actual injury she sustained.    You will take all the circumstances into consideration, and award damages to the plaintiffs for all the injuries Mrs. Smith actually sustained from any want of skill or of proper care on the part of the defendant.    Any pain or suffering caused to Mrs. Smith by defendant's want of skill or care must be taken into consideration as injuries in awarding damages to the plaintiffs; and you will award such damages as will be a full compensation for all the injuries which Mrs. Smith sustained by reason of any want of skill or proper care on the part of the defendant.

" Plaintiffs are not entitled in this case to recover what are called exemplary or vindictive damages; that is, the plaintiffs are not entitled to recover damages of the defendant for the sake of example or as a punishment on defendant.

" The foregoing is so much of the charge of the Court as is necessary for a full understanding of the errors complained of.    It is proper that the Court state, as a reason for giving the last one of the above charges, viz: The charge in relation to exemplary or vindictive damages, that the plaintiffs' counsel, in their argument before the jury, insisted on the right of plaintiffs to recover exemplary or vindictive damages by way of punishment of defendant.

" GEORGE D. RICE,
" Judge S. C."

To which decision, overruling the motion for a new trial, counsel for plaintiffs excepted.

CLARK & LAMAR, for plaintiffs in error.

J. J. FLOYD, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

This is an action brought by the husband and wife against the defendant, as a physician, for an injury done to the wife in delivering her of a child. Upon the evidence, and under the charge of the Court, the jury found a general verdict for the defendant.

A new trial was moved for, mainly on the ground of the misdirection of the Court as to the law. The application was denied; and this is the judgment excepted to and sought to be reversed.

The declaration, as amended, claimed damages, not only for the bodily pain and injury inflicted upon the mother, but also for the mental sufferings occasioned, as it is alleged, by the unnecessary destruction of the life of the child; and the burden of complaint is, that owing to the manner in which the law was given to the jury, this last ground of grievance was withdrawn from their consideration. At any rate, that the jury were misled, or likely to have been so, by the charge; that the jury might have been satisfied that Dr. Overby did not bring competent skill to the treatment of the case, and yet they permitted him to escape because it was not shown that the wife had not sustained any bodily injury.

It is true, the Court did not restrict, in so many words, the finding of the jury to the bodily injury done to the wife, as is assumed in the motion for a new trial. On the contrary, the Judge directed them to all of the injuries complained of in the declaration; and yet, we can readily believe that the jury did not so understand the instructions given to them, and that their finding may have been the result of this misconception. The jury are directed that the plaintiffs are entitled to recover for all the injuries Mrs. Smith "*actually sustained*" from any want of skill or proper care on the part of Dr. Overby; and the same phraseology is repeated in the charge, and the mind of the jury is no where called to the anguish of maternal feeling produced by the destruction of the child; and for this reason, we think it will better subserve the ends of justice to have this case re-examined.

As to the degree of skill and care required of a physician, we find no fault in the charge. And we concur with the Court, that this is not a case, judging from the evidence in the record, for positive damages, even conceding that there

are cases where exemplary damages may be awarded. The defendant may have exhibited a want of skill, for which he is responsible. But we see nothing in the proof that should subject him to be punished as an example to others.

The first question to be settled by another jury is, does it appear, from the evidence, that Dr. Overby was so deficient in care or skill as to subject him for the consequences of his mistreatment? And if so, what should be the compensation to which the plaintiffs are entitled?

The proof is, that the case was one of difficulty, owing to the unnatural presentation of the child. But were the circumstances of such an extraordinary character as to excuse the physician for any fatal mistake which he may have committed? Dr. Overby gave two accounts of the obstacles which he had to encounter. One was, that he supposed there were yet two other children in the womb, one having been already born; and that the remaining two were united or "linked together," to use his own language, so as to prevent him from turning them. The other was, that the second child could not be turned owing to the sudden and violent contraction of the womb, after the expulsion of the other child.

The first hypothesis turned out to be unfounded. As to the second, neither the testimony of Dr. Stewart nor any other witness shed any very satisfactory light. True, Dr. Stewart swears that had the same circumstances existed, two hours before (when the amputation of the arm and probable death of the child took place) which surrounded the case when he arrived, it would have been easier to have effected a delivery than when he got there. He found no difficulty in effecting a delivery in ten or fifteen minutes. But then the system of the mother was greatly relaxed, even to syncope. She had fainted and was actually unconscious when the child was born. Upon the next trial, medical skill can make this point plain.

It occurred to me on the argument, that the conduct of the physician, which most needed explanation, was this: He seemed to have come to the conclusion that nothing but a partial dissection of the child could save the mother. Hence, he proceeded to amputate the protruded arm; and having administered an opiate, he desisted from doing anything more until the arrival of Dr. Stewart, two hours afterwards. Why take this decided course, thus causing, as it probably did, the

death of the child, and then stop short, without consummating his purpose?

Since delivering the opinion which I did in this case, and before leaving Court, I am inclined to think that, in my ignorance, I may have magnified this apparent error.. By reference to the cases of difficult preternatural and complicated labor commented upon by Dr. Robert Lee, in his Treatise on Clinical Midwifery, a standard work kindly placed in my hands by an eminent accoucheur, I am inclined to think that the amputation of the arm, and the opiate administered, might, after the delay which intervened before the arrival of Dr. Stewart, have produced quite a change in the condition of Mrs. Smith, thereby enabling Dr. Stewart readily to deliver the child, which the forcible contraction of the womb, at the time of the amputation, have prevented; and that the practice pursued by Dr. Overby may likely be sustained by the highest medical authority.

Case No. 3, at page 122, in the First American from the Second London Edition of that Treatise; and Rambotham's book on Transverse Presentations, with the illustrations, have brought my mind to the conclusion, that while a physician of more skill and experience may have succeeded in saving the child, yet, that the evidence does not satisfactorily establish that want of proper care and skill, under all the circumstances of this case, which should make the defendant liable for any want or error of judgment he may have committed. In cases of doubtful practice, a certain amount of discretion must be exercised by the qualified medical man. A contrary doctrine would drive from the profession many worthy men, or render them timid, where confidence and boldness were demanded.

As to the law of damages, it is not necessary to decide between the conflicting opinions of those distinguished jurisconsults, Professor Greenleaf and the late Mr. Sedgewick, the former holding that damages are compensatory only; and the latter, that the jury may give damages, not only to recompense the sufferer, but to punish the offender where the elements of fraud, malice, gross negligence or oppression mingle in the controversy; thus blending the interest of society with that of the aggrieved individual.

We apprehend that in most of the cases, when carefully examined, it will be found, that whether the injury be done

to person or estate, the measure of damages is, after all, the actual injury inflicted, neither more nor less.

An assault and battery is committed on the person by pulling plaintiff's nose or spitting in his face, the object being to degrade him. What, I ask, is the actual injury? The mere bodily sufferings? That is nothing. Man has a moral as well as a physical nature. Here the injury is to his feelings—his honor—his pride—his social position. Suffer these to go unprotected, unredressed, and life itself is no longer tolerable nor desirable. Hence, the jury in such case should render large damages, not as punishment, but to compensate the actual injury. They must put a price upon the manhood of a freeman, and mulct the defendant accordingly.

Let this illustration suffice. Analyze the cases, and the same solution applies to all. Courts and text-writers have not clearly comprehended this doctrine and the philosophy of it. Otherwise, there would be harmony instead of confusion and apparent contradiction upon this subject.

Apply the rule to the case before us: grant that Mrs. Smith felt that the fruit of her womb had been lost to her, and that all her maternal yearnings and fond affections had been doomed to cruel disappointment, and yet, that there was no want of sympathy and proper exertion on the part of Dr. Overby, and that the misfortune was attributable entirely to his want of requisite skill for the emergency, while she would still suffer, and be entitled to compensation for her grievances; yet, how much keener and more poignant would have been her grief, and to how much larger damages would she be entitled, if her sorrow and anguish were the result of unfeeling, though conscious empiricism!