COLE *v.* ATLANTA & WEST POINT RAILROAD CO.

It is unquestionably the duty of a railroad company to protect a passenger against insult or injury from the conductor of the train on which the passenger is riding; and this being so, the unprovoked use by a conductor to a passenger of opprobrious words and abusive language tending to cause a breach of the peace, or to humiliate the passenger or subject him to mortification, gives to the latter a right of action against the company.

Submitted June 28, — Decided August 5, 1897.

Action for damages. Before Judge Harris. Coweta superior court. September term, 1896.

Cole sued the railroad company on account of mental suffering endured by him from the conduct of its servant toward him while he was a passenger on its train. The declaration was dismissed on demurrer for want of a cause of action. It appears, that plaintiff was a passenger on an excursion-train

on which were two conductors.   One of them, Howard, passed through the car in which he was seated, and took up his ticket for which he had paid and which entitled him to be carried. Soon thereafter another conductor whose name is unknown entered the car and demanded plaintiff's ticket, who courteously informed this second conductor that Howard had just passed through and taken up the ticket; whereupon conductor number two said to plaintiff in a rough and angry manner, "You are a God damn lie.   Howard has not taken up your ticket.   You are only deadbeating your way.   If you do not give up your ticket, you must pay your fare, or I will put you off the car at Powellville."   He then left plaintiff, went into the next car and returned with Howard, and pointing out plaintiff, asked Howard if he had taken up plaintiff's ticket.   Howard replied that he had not, and demanded the ticket of plaintiff, who politely informed him that he was mistaken, and that he had taken up the ticket.   Howard said, "I know I have not taken up your ticket, and you must give up your ticket, pay your fare, or I will put you off the car at Powellville.   You are only deadbeating your way."   The car was filled with passengers. Some of them informed said conductors that they knew Howard had taken up plaintiff's ticket; but said conductors paid no attention to this, and continued to demand the ticket of plaintiff. Plaintiff informed them that if necessary he would swear that Howard had taken up his ticket; whereupon Howard demanded that plaintiff hold up his right hand and solemnly swear that he had taken up his ticket; and thereupon said conductors, being agents and employees of defendant, said to plaintiff, "You have sworn a God damn lie.   You are only deadbeating your way.   As you have sworn a God damn lie, I will pass you."   This was in the presence and hearing of the other passengers on the car.   Afterwards the defendant retained said conductors in its employment, and still so retains them.

*W. H. Bingham, W. L. Stallings* and *D. B. Whitaker*, for plaintiff.

*Dorsey, Brewster & Howell*, for defendant.

FISH, J.   The plaintiff's petition set forth a cause of action.

"Railroad companies are liable for torts committed by their servants in the prosecution and within the scope of their business, whether the same be by negligence or voluntary." *Western & Atlantic Railroad* v. *Turner*, 72 *Ga.* 292, 294. Accordingly, a plaintiff is entitled to recover damages for an assault made upon him; and "when to this are added other wrongs and violations of rights and duties; when he was insulted and villified by their agents while under their protection; when they failed to exercise the 'extraordinary diligence' which the law requires at their hands for his safety and comfort, — surely these are circumstances entitling him to compensatory damages, as well for wounded feelings as for the inconvenience, pain and suffering, for this wanton and cruel violation of his rights by the conductor and his assistants." · *Georgia Railroad* v. *Olds*, 77 *Ga.* 681; *Atlanta & West Point Railroad* v. *Condor*, 75 *Ga.* 55; *Gasway* v. *Atlanta & West Point Railroad Co.*, 58 *Ga.* 216, 220. "Wounding a man's feelings is as much actual damage as breaking his limbs. The difference is, that one is internal and the other external; one mental, the other physical." *Head* v. *Georgia Pacific Railway Co.*, 79 *Ga.* 360. "The carrier's obligation is to carry his passenger safely and properly, and to treat him respectfully; and if he intrusts the performance of this duty to his servants, the law holds him responsible for the manner in which they execute the trust. The law seems to be now well settled that the carrier is obliged to protect his passenger from violence and insult, from whatever source arising. . . He must not only protect his passenger against the violence and insults of strangers and copassengers, but a fortiori, against the violence and insults of his own servants. If this duty to the passenger is not performed, if this protection is not furnished, but on the contrary the passenger is assaulted and insulted through the negligence or the wilful misconduct of the carrier's servant, the carrier is necessarily responsible. And it seems to us it would be cause of profound regret if the law were otherwise. The carrier selects his own servants and can discharge them when he pleases, and it is but reasonable that he should be responsible for the manner in which they execute their trust. To their care and fidelity are

intrusted the lives and limbs and comfort and convenience of the whole traveling public, and it is certainly as important that these servants should be trustworthy as it is that they should be competent. It is not sufficient that they are capable of doing well, if in fact they choose to do ill; that they can be as polite as a Chesterfield, if in their intercourse with the passengers they choose to be coarse, brutal and profane. The best security the traveler can have that these servants will be selected with care, is to hold those by whom the selection is made responsible for their conduct." Goddard v. Grand Trunk Railway, 57 Me. 213, 214, followed and approved in Hanson v. E. & N. A. R. R. Co., 62 Me. 84. The greater part of the above extract is quoted and adopted as the text in Hutchinson on Carriers, § 596. See also Ray, Negl. Imposed Duties (Pass. Car.), 340; Booth, St. Ry. Law, § 372. "The carrier's liability is not confined to assaults committed by its servants, but it extends also to insults, threats, and other disrespectful conduct. Thus, a street-railway company is liable for the act of its driver in falsely charging a passenger, in the hearing of others, with passing counterfeit money in payment of fare, and in threatening him with arrest. So, if the master of a vessel forcibly drives the passengers out of the cabin, if he compels them to lodge with the common hands, if, by his indecency, rudeness or brutality, he shock the modesty of a female passenger, so as to oblige her to quit the cabin, or as to render the passage comfortless by a continued series of vexation, misery and torment, both he and his employers are liable." 2 Fetter, Car. of Pass. § 366, citing Lafitte v. Railroad Co., 43 La. Ann. 34, s. c. 8 So. Rep. 701; Keene v. Lizardi, 3 La. 273; St. Almand v. Lizardi, 4 La. 244. In this connection, see also: Campbell v. Pullman Palace Car Co., 42 Fed. Rep. 484, affirmed by U. S. Sup. Ct., 154 U. S. 513; Baltimore & Ohio R. R. Co. v. Blocher, 27 Md. 277; Craker v. Chicago & Northwestern Ry. Co., 36 Wis. 657; Bryant v. Rich, 106 Mass. 180; Louisville & Nashville R. R. Co. v. Whitman, 79 Ala. 328; Chicago & Eastern R. R. Co. v. Flexman, 103 Ill. 546; Terre Haute & Indianapolis R. R. Co. v. Jackson, 81 Ind. 19.

On the argument here, it was practically conceded by the

distinguished counsel who represented the railroad company that, under the facts alleged, there had been a violation and disregard of the duty which the company owed to its passengers.   Yet, it was contended the plaintiff did not allege facts "showing any assault, and the only thing charged is that the conductor used insulting words, making no assault, and the only injury claimed to have been received [was] injury to feelings"; and accordingly the argument was presented, that although "wounded feelings may be treated as an element of· damage" where a passenger has been wrongfully ejected or assaulted, still an action will not lie unless "there has been an injury to the 'person or purse'" of a passenger who has been ill-treated at the hands of the carrier's agents.    In other words, counsel stated their understanding of the question presented by the present record to be: "Does the law afford any redress for wounded feelings, unaccompanied by any injury to the person or purse?"    They strenuously insisted to the contrary, and in this connection relied on the case of *Chapman* v. *Western Union Telegraph Co.*, 88 *Ga.* 763, wherein it was held that:   "A person to whom a telegraphic message was addressed and sent, informing · him of the desperate illness of his brother and requesting him to come, is not entitled to recover of the telegraph company damages on account of mental pain and suffering alleged to have resulted to the plaintiff from failure of the company to deliver him the message in due time, and from delaying delivery till too late to take the last train available for reaching the brother before his death occurred."    We recognize the soundness of the doctrine laid down in that case, and that it directly sustains the proposition for which it is cited. Obviously, however, it has no application to a case such as the one at the bar.    Conceding that the plaintiff entirely fails to allege facts showing that an actual, physical assault was made upon him, still the allegations of his petition affirm in unequivocal terms a most wanton and inexcusable injury to his person, viz. a flagrant attack directed towards his reputation. The right to personal security comprehends and includes security in one's reputation, as well as in his life, limb, or liberty. Clearly, under the facts alleged, a suit would lie against the

company's servants themselves for malicious slander, and the company has utterly failed in its duty to protect its passenger from insult, abuse and ill-treatment of a nature which the law thus recognizes as furnishing the basis of an action calling for damages calculated to deter a wrong-doer. The gist of the present complaint is that the company, though legally bound to protect and shield from attack the plaintiff's person, suffered him to undergo the pain and mortification of being publicly denounced in coarse and brutal language as one who was dishonestly attempting to "deadbeat" his way and who had gone through the form of swearing to what he knew to be wholly false in order to effect his purpose. While this was a wanton act of commission by a servant of the company, it was also a negligent omission on the part of its servants to perform towards the plaintiff a duty imposed by law upon their master. The distinction just pointed out is clearly recognized in *Chapman's* case, supra, page 772, wherein it is said: "The law protects the person and the purse. The person includes the reputation. *Johnson* v. *Bradstreet Co.*, 87 *Ga.* 79. The body, reputation, and property of the citizen are not to be invaded without responsibility in damages to the sufferer. But outside these protected spheres, the law does not yet attempt to guard the peace of mind, the feelings or the happiness of every one, by giving recovery of damages for mental anguish produced by mere negligence." Again, on page 767, it is expressly said that the doctrine contended for did not apply to actions for libel or slander, for "malice (express or implied) is an essential element in such cases"; and "where the words are actionable per se, they have a sure tendency to degrade the citizen in the estimation of his fellows, which results in damage to his social influence and business efficiency."

We do not, of course, wish to be understood as dealing with the present action as though it were an attempt to sue the company for a slander committed by its agents. On the contrary, we merely mean to hold that a carrier is liable in damages for failure to perform its public duty to protect a passenger from abusive language which amounts to slander—not as the perpetrator of the outrage itself. Indeed, it matters not whether

a servant or a stranger was the real wrong-doer, if the company has failed to furnish the passenger with the proper protection against such misuse; for in either event its liability will result from its breach of a public duty, not because the real wrong-doer's act is in law imputable to it. As has been seen, when the company's servant to whom it intrusts the performance of its duty to protect its passengers is himself the tort-feasor, it is bound to respond in damages, simply because it can not escape liability by delegating its duties to another who abandons his office at the critical moment and thus places the company in the attitude of having no one on the scene to perform for it the duty, it having entirely failed to provide for the emergency by choosing to rely solely upon a servant who proves unworthy of the trust. In a word, the company's liability arises from an act of omission, and it is not chargeable with the wanton act of commission on the part of its servant from which the passenger suffers injury to his reputation.

For the reasons above stated, we think the trial judge erred in dismissing the plaintiff's petition, which certainly was good as against a general demurrer.

*Judgment reversed. All the Justices concurring.*