532. DUNN *v.* WESTERN UNION TELEGRAPH COMPANY *et al.*

1. When the trial court has dismissed an action upon both special and general demurrers, and this court finds that the special demurrer has been properly sustained, but that the petition sets out a cause of action, the judgment will be affirmed, with such direction as the discretion of this court may see fit to impose in the interests of justice.

2. Every public-service company owes to such members of the general public as have occasion to transact with it the business it is accustomed to perform the duty of affording them safe and decent access to the office or other place where such transactions are to be had. It must see that those members of the public who come to the usual and appointed place to deal with it are accorded respectful treatment. A breach of this duty, whereby injury results to a person lawfully and properly attempting to deal with it, is actionable.

(*a*) A telegraph company is a public-service corporation.

(*b*) If a person enters a telegraph office with the intention of delivering a message for transmission, and, without provocation, the agent in charge of the office orders him out, and insults and humiliates him by abusive language, a cause of action against the telegraph company arises in favor of such person.

3. While mental suffering, unaccompanied by injury to purse or person, affords no basis for an action predicated upon wrongful acts merely negligent, yet such damages may be recovered in those cases where the plaintiff has suffered at the hands of the defendant a wanton, voluntary, or intentional wrong the natural result of which is the causation of mental suffering and wounded feelings.

Action for damages, from city court of Floyd county—Judge Hamilton. May 27, 1907.

Argued October 22,—Decided November 14, 1907.

*M. B. Eubanks, W. B. Mebane,* for plaintiff.

*McHenry & Porter, George A. H. Harris & Son, Shumate & Maddox, George H. Fearons,* for defendants.

POWELL, J.    Dunn brought his action against the Western Union Telegraph Company and the Southern Railway Company by a petition, which, omitting formal parts, is substantially as follows: Defendants are, the one a telegraph company, the other a railway company, doing business in Floyd county; and, by their acts done in said county, have injured the plaintiff in the sum of $1,000; for that "on August 13, 1906, petitioner and one Walter Jeffries went to the office of the said Western Union Telegraph Company at said Lindale, which said office is in the depot of the said Southern Railway Company, at said Lindale, said office of the said Western Union Telegraph Company being the usual place for the reception and sending of telegraphic messages at said Lindale, for the purpose of delivering and having sent a message for two minor and orphan children by the names of Yeager; said message being for the uncle of said children and announcing the death of said children's mother and requesting that their uncle come

and bury their dead mother. After arriving at said depot of the said Southern Railway Company and office of said Western Union Telegraph Company, petitioner informed the agent in charge of said office and depot of his desire to send a message to Yeager, the aforesaid uncle of said Yeager children, for the said Yeager children, announcing the death of their mother. Petitioner had a right to be in said depot and at said office, and it was the duty of defendants to allow petitioner to remain in said depot and at said telegraph office, to transact his said business, and until he had transacted his business. While in said depot and at said office, and before petitioner had transacted his business or before petitioner had had time to transact said business, the agent in charge of said office and depot wilfully, wantonly, malignantly, maliciously, and illegally evicted petitioner from the office of the said Western Union Telegraph Company and the depot of the said Southern Railway Company. In evicting the petitioner as aforesaid by the agent aforesaid, said agent was brutal, inhuman and insulting, in that said agent told petitioner, when he tried to get said agent to send said message, to 'Go to hell with your God damn message.' Petitioner then told said agent that his message was one of necessity, and begged said agent to receive and send same, whereupon said agent said "God damn you, get out from here. Leave, God damn you, git." Whereupon petitioner, fearing bodily harm, immediately left said depot and office, and said agent did not receive said message. The conduct of the said agent was wanton, willful, malicious, and illegal, and, being done by said agent so wilfully and wantonly, entitles petitioner to punitive damages for which he sues.

By amendment the petition further alleges, that "the telegraph office of the Western Union Telegraph Company at said Lindale was located in the depot and office of the Southern Railway Company, and the agent in charge of said depot was also the agent of said telegraph company, and the acts hereinafter complained of were committed at the time and place where said agent was the agent of both defendants. The said Yeager children had no father, their mother had just been killed by lightning, and it was at the request of these children that plaintiff went to said office to send the telegram as herein set out."

By separate demurrers the defendants raised the following

points: "That there is a misjoinder of defendants, the business of the defendant Western Union Telegraph Company being altogether different from and independent of the business of the Southern Railway Company. That the allegations of the fifth paragraph are vague and indefinite, in that it is not alleged whether it was the purpose of the petitioner, or of Walter Jeffries, to deliver and have sent said message; nor is there any allegation that said petitioner and said Jeffries or either of them were connected with, had any interest in, or were requested to send any such message, nor by what authority said petitioner or said Jeffries represented or pretended to represent said minor children. That there is no allegation that any telegram was ever written out on any blank of defendant or any other paper writing, and tendered to said agent for transmission; nor is there any allegation that the regular charges of such transmission were ever offered or tendered said agent. That there is no allegation at what hour of the day of August 13, 1906, petitioner went into the office of the defendant for the purpose alleged. That no cause of action is set forth. That petitioner seeks damages for injury to his feelings, and indignities offered to the plaintiff by defendants' agent, and nowhere alleges any loss of time, personal injury, or pecuniary loss of any kind. That no action for injury to feelings, insult or personal indignities can be maintained, unless there is alleged in connection with such acts and conduct some pecuniary loss, as loss of time, personal injury, or other ground of actual injury for which a recovery can be had. That there can be no punitive damages recovered in the case, for the reason that no actual injury is shown, as loss of time, loss of money, personal injury, or some other injury for which pecuniary compensation can be had. That the only recovery sought in this case is for alleged injury to the plaintiff's feelings, and any recovery therefor must in its nature be punitive, and such damages can not be recovered when not accompanied by some pecuniary loss, as loss of time, increased expenses, personal injury, or some other circumstances or fact which would entitle plaintiff to compensation under the law. That the petition shows that two parties are sued in this case for separate and distinct causes of action, and that said parties can not be sued jointly in the said case. In the one the cause of action alleged against the Western Union Telegraph Company is for a failure to

send a message through its agent at Lindale; the cause of action against the Southern Railway Company is for misconduct of its agent in ejecting from its depot at Lindale the plaintiff, who had gone into said depot for the purpose of sending a message by the Western Union Telegraph Company. That the petition shows on its face that the defendant was not at the railroad office for the purpose of transacting any business with the Southern Railway Company, and that whatever the man in charge did was done as the agent of the Western Union Telegraph Company, and that in what he did he in no way represented the railroad company, and that the railroad company is not responsible for any act of the man at its depot in connection with the matter complained of in the petition."

Both demurrers were sustained, and the plaintiff brings error. In this court the plaintiff in error concedes that the Southern Railway Company was not a proper party to the suit.

1. For the conceded misjoinder, the judgment of the lower court will be affirmed; but since this is not a matter going to the merits of the transaction, and since the general demurrer of the telegraph company was also sustained, it will be necessary for us to look further into the case, that such direction may be given as will be proper under the circumstances. Civil Code, § 5498, par. 2. See also *Jarrell* v. *American Pipe Bending Machine Co.*, 2 *Ga. App.* 765 (59 S. E. 186).

2. The grave question remaining in the case is whether the petition sets forth a cause of action against the telegraph company. The gist of the action is not the failure or refusal of the telegraph company to transmit a message tendered to it, but the alleged disrespectful, humiliating, and insulting treatment by its agent, of a member of the general public, lawfully in its office on business with the company. The contention is that the entire damage alleged is such as affects only the feelings of the plaintiff, and that damages for mental suffering can not be recovered unless there is a concomitant injury to person or purse. The further contention is made that no breach of duty to the plaintiff is shown. We will dispose of these contentions in inverse order.

A telegraph company is a private corporation performing a public duty; and whether it is a common carrier, a bailee, or a person engaged in business sui generis, is immaterial. It is a

54

public-service company, one engaged in a business of such nature as to clearly distinguish it from those purely private persons and corporations who may conduct their own business in their own way. All such corporations, on account of the interest which the public has in the manner in which their business is conducted, as well as on account of the special franchises enjoyed by them, must observe certain rules of dealing with the public. These rules, and the corresponding duties which are implied from the nature of the calling, are not always declared by specific statute, but are frequently enforced by the courts as a part of the general law or of the common law. "Upon each person, in every position he occupies, peculiar duties are imposed, each demanding its discharge with an emphasis accentuated or modified by the attendant circumstances." Ray, Negligence of Imposed Duties, Personal, §1, "One of the great requirements which the government demands of every institution impressed with a public interest—and one which is thrown over every citizen as a great and protective shield —is the duty to act impartially with all. They are under obligations to extend their facilities to all persons, on equal terms, who are willing to comply with their reasonable regulations, and to make such compensation as is exacted from others in like circumstances." Jones, Telegraph and Telephone Companies, §236. From this principle, universally recognized, springs the corollary that all such persons, natural and artificial, shall afford to such members of the public as have occasion to transact with them business of the nature they are holding themselves out as being accustomed to do, safe and decent access to the places opened up for the transaction of the business in question. This safety does not mean mere physical safety; nor this decency mere absence of obscenity, but by the employment of the expression "safe and decent access" it is intended to connote also the notion of freedom from abuse, humiliation, insult, and other unbecoming and disrespectful treatment. A member of the public is not to be deterred from transacting or offering to transact the business which the law compels a telegraph company to accept impartially from every person, by reason of the fact that he can not enter the public office without being subjected to insult or personal affront. A violation of this duty has occurred whenever a person entering the telegraph office for the purpose of sending a message has been

met with disrespectful or insulting treatment at the hands of the company's agents. It is immaterial that the person thus injured had no personal interest in the message, that he was the mere agent of another; for there is no such requirement as that persons desiring to transact business with public-utility corporations shall do so in person. The fact that the right of respectful treatment, while attempting to do business with a public-service company, follows as the natural sequence from the right. to be served impartially and at all reasonable times, seems to render the citation of authority as to the existence of this right of respectful treatment unnecessary. We do, however, call attention to the Georgia cases of *Gasway* v. *Atlanta & West Point R. Co.*, 58 *Ga.* 216, 221; *Georgia R. Co.* v. *Richmond*, 98 *Ga.* 495, 502. It will be noted that while these were actions against carriers, in neither case did the liability depend upon the fact that the plaintiff was a passenger. In *Gasway's* case he was attempting to check baggage as agent for his wife; in *Richmond's* case he had called at the passenger station to see about certain trunks; and the court, in deciding the case, took pains to call attention to the fact that the relation of carrier and passenger did not exist at that time. We might multiply citation of precedents, but these are sufficient.

3. The telegraph company therefore violated its duty towards the plaintiff, in that it did not afford him safe and decent access to its office; the plaintiff suffered the injury of humiliation and wounded feelings. Is it a case of damnum absque injuria because no injury to purse or person also ensued? That damages for mental suffering are compensatory in character can hardly be open to question. "Wounding a man's feelings is as much actual damage as breaking his limbs. The difference is that one is internal and the other external; the one mental, the other physical." *Head* v. *Ga. Pac. R. Co.*, 79 *Ga.* 358, 360; *Smith* v. *Overby*, 30 *Ga.* 241, 248. Such damages may in the very nature of things be just as proximately and naturally the consequence of the defendant's wrong as any other damage; so that there is no legitimate objection to their allowance for any lack of this element. Of course there may be cases where mental suffering is not a proximate and natural result of an injury, but this is true as to any other form of damage. Nor can it be justly said that an allowance for mental suffering is any more speculative or conjectural than dam-

ages for physical pain and suffering. Those cases which preclude recovery of damages for mental suffering, when no other injury is shown, can not fairly rest on any of these grounds; but must be based upon the theory presented by Allen, J., in the case of Spade *v.* Lynn, etc., R. 168 Mass. 285, that the rule is purely arbitrary, though actually existent in certain classes of cases.    See also Homans *v.* Boston Elevated Ry. Co., 180 Mass. 456, wherein the court, through Holmes, J., says that the rule, being arbitrary, is not to be extended.    This arbitrary rule is generally applied only to those cases where the injury is the result of mere neglect.    The leading case of *Chapman* v. *Western Union Tel. Co.*, 88 Ga. 763, as well as the cases which have followed it, puts this State in line with those that hold that in actions on account of wrongs merely negligent, mental suffering unaccompanied by other injury can not be the basis of a recovery.    Those courts, however, who assert this doctrine even most strenuously, do not extend its application to those intentional injuries of which insult, humiliation, and mental suffering are the natural consequences.    As Allen, J., in the Spade case, supra, says: "It is hardly necessary to add that this decision does not reach those classes of actions where an intention to cause mental distress or to hurt the feelings is shown or is reasonably to be inferred."    By this distinction, there can be seen between the case of *Chapman* v. *Telegraph Company,* supra, and that of *Cole* v. *Railway Company,* 102 Ga. 474, a clear, logical discrimination.    The holding in the *Cole* case is undoubtedly the law, and is unequivocally supported by authority.    There a railway conductor intentionally and wantonly insulted a passenger, not by using slanderous language to him, as the court intimates in the opinion (for the language was not per se slanderous, and there were no allegations stating it to be so for any special reason), but by using to him insulting and humiliating language.    The whole injury was to the plaintiff's feelings.    The court says that case is distinguishable from the *Chapman* case; and it is; not because the plaintiff in the *Cole* case was slandered, but because that was an action upon a malicious and intentional tort, the other upon a merely negligent though wrongful omission.    See Watson on Damages, §399; Burdick, Law of Torts, 101; Wilkinson *v.* Downtown [1897], 2 Q. B. 57 (wherein a recovery was upheld in favor of a wife for mental shock on account of defendant's falsely and ma-

liciously telling her that her husband had been seriously wounded) ; Rice *v.* Rice, 104 Mich. 371 (where a recovery by a wife for mental suffering occasioned by the alienation of her husband's affections was held proper, though no financial loss in the matter of support was shown). See also Barber *v.* Reese, 60 Miss. 906; Conklin *v.* Thompson, 29 Barb. (N. Y.) 218.

As against the telegraph company the petition sets out a cause of action. We do not think the special demurrer is well founded so far as it calls for the hour at which the alleged wrong occurred. Therefore the judgment is affirmed, with direction that the dismissal may be avoided and the case reinstated provided the plaintiff, within twenty days from the time the remittitur of this court is filed in the office of the clerk of the trial court, shall file an amendment striking the Southern Railway Company as party defendant.        *Judgment affirmed, with direction.*