L. Earl PRICE, Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.

Civ. A. No. 692–12.

United States District Court, S.D. Georgia, Statesboro Division.

Jan. 26, 1995.

Curtis Van Cheney, Jr., Reidsville, GA, Hal Timothy Peel, Hallmon & Associates, Claxton, GA, for plaintiff.

Arthur Martin Kent, Kent, Williamson & Brannon, Savannah, GA, for defendant.

**1568**

## MEMORANDUM & ORDER

EDENFIELD, Chief Judge.

On March 16, 1992, Plaintiff filed this suit, claiming intentional or, alternatively, negligent infliction of emotional distress, and a vaguely stated general negligence claim. By Order of January 17, 1995, the Court rejected the notion of an independent tort for the negligent infliction of emotional distress, but allowed Plaintiff to proceed on claims of intentional infliction of emotional distress and general negligence. On January 20, 1995, a trial was held, during which Defendant moved for a directed verdict at the close of the evidence. The motion was granted. The Court now supplements its ruling with this memorandum and order.

### I. Background

On November 9, 1990, Plaintiff's wife's truck was struck by another vehicle while parked in a garage. The driver of the errant vehicle, Marguerite Lawson, notified the Defendant—her insurance company—which then assigned the claim to Pat Parker, a claims adjuster. Mr. Parker and Plaintiff then had various conversations about repair of the truck. The discussions soon became increasingly combative, and Plaintiff allegedly warned the adjuster that he had a serious heart condition and wished to avoid stressful situations. On November 20, 1990, Plaintiff received a call from Parker during which the adjuster was allegedly quite abusive. At trial Parker denied acting belligerently during the conversation. Immediately following the call, Plaintiff had "an attack of accelerated angina," and was rushed to the hospital. He was released three days later.

### II. The Standard for a Directed Verdict

The purpose of a directed verdict, recently renamed "judgment as a matter of law," is to facilitate the exercise by trial courts of their responsibility to assure the fidelity of court judgments to controlling precedent. Its new name, a result of the 1991 Amendments to the Federal Rules of Civil Procedure, is intentionally evocative of summary judgment standards. Rule 50(a)(1) of the Federal Rules states:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonably jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

The Court may direct a verdict "as soon as it is apparent that either party is unable to carry a burden of proof that is essential to that party's case." 1991 Advisory Comm. Notes to Rule 50. Rule 50(a)(2) provides that motions for directed verdict may be made by a party at any time before submission of the case to the jury, and that the moving party must articulate the legal and factual basis for the motion. This requirement gives the opposing party an opportunity to remedy any overlooked deficiencies in its proof.

The Court should view all evidence and inferences drawn therefrom in the light most favorable to the opposing party. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir. 1989); *Thibodeau v. United States,* 828 F.2d 1499, 1503 (11th Cir.1987). Directed verdicts should be granted only if "the facts and inferences point overwhelmingly in favor of one party such that reasonable people could not arrive at a contrary verdict." *Id.* If there is "substantial evidence" opposing the motion, whether made by a party or initiated by the Court, it should not be granted. *Id.; Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).[1] *See also Hasenfus v. Secord,* 962 F.2d 1556, 1559 (11th Cir. 1992).

### III. The Claim

■ At trial, when asked by his own counsel to relate exactly what Pat Parker had said to him that caused such emotional trauma, Mr. Price stated simply that "he called me a liar." This appears to have been the

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

full extent of the psychic blow that prompted Mr. Price to file a claim for the intentional infliction of emotional distress. After Defendant moved for a directed verdict, Plaintiff's counsel argued to the Court that two factors exacerbated Mr. Parker's statements, propelling them over the threshold required to state a viable claim on this tort. Those factors were (a) that Parker and Price had a "special relationship," in which Parker enjoyed a position of power *vis a vis* Price, and (b) that Parker had "special knowledge"—knowledge of Price's heart condition and the concomitant dangers posed by extreme stress. Plaintiff's counsel argued that Parker's verbal abuse of Price, in the face of Parker's position and knowledge of Price's condition, was so wanton and cruel as to make it outrageous, and thus tortious.

Despite these circumstances the Court held that no reasonable trier of fact could find Plaintiff's conduct tortious as a matter of law. A review of the law in this area will show why the Court was and is firmly of this opinion. It is also intended to provide guidance to other potential plaintiffs.

## IV. The Tort of Intentional Infliction of Emotional Distress

### A. The Present State of the Law

The current framework of this tort within Georgia law is as follows: Plaintiffs may recover if a "defendant's actions [were] so terrifying or insulting as naturally to humiliate, embarrass or frighten ·the plaintiff." *Moses v. Prudential Ins. Co.,* 187 Ga.App. 222, 226, 369 S.E.2d 541 (1988). This standard has three prongs. Plaintiffs must show:

> (1) that the defendant's behavior was willful and wanton and intentionally directed to harming the plaintiff; (2) that the actions of the defendant were such as would naturally humiliate, embarrass, frighten, or outrage the plaintiff; and (3) that the conduct caused mental suffering or wounded feelings or emotional upset or distress to the plaintiff.

*Coleman v. Housing Auth.,* 191 Ga.App. 166, 170, 381 S.E.2d 303 (1989).[2]

Most decisions on emotional distress claims are sure to mention (a) that to rise to the requisite level of outrageousness, the acts complained of "must be sufficiently egregious or outrageous to result in severe fright, humiliation, embarrassment, or outrage which no reasonable person can be expected to endure," *Kornegay v. Mundy,* 190 Ga.App. 433, 434, 379 S.E.2d 14 (1989); and (b) that liability "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Jenkins v. General Hospitals of Humana, Inc.,* 196 Ga. App. 150, 152, 395 S.E.2d 396 (1990). These two statements have attained boilerplate status within the common law. Some courts even cite commentary on the Second Restatement of Torts to further buttress the position that this claim is not the salve for every social wound. *See, e.g., Moses,* 187 Ga.App. at 225, 369 S.E.2d 541 (citing ch. 2, § 46(1), cmt. d, for the often quoted statement, "The rough edges of our society are still in need of ... filling down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.").

Of course, these exhortations have not deterred some from suing when they get scratched by one of these "rough edges," be those edges employers rude enough to fire them, *Beck v. Interstate Brands,* 953 F.2d 1275, 1276 (11th Cir.1992) (claim denied); employers who make them work too hard, *Norfolk Southern Ry. Co. v. Spence,* 210 Ga.App. 284, 285, 435 S.E.2d 680 (1993) (claim denied); employers so insensitive as to not hire them in the first place, *Ward v. Papa's Pizza to Go, Inc.,* —— F.Supp. ——, Civil Action No. 694–041 (S.D.Ga., Jan. 10, 1995) (claim denied); co-workers who subject them to pipe smoke, *Hennly v. Richardson,* 264 Ga. 355, 356, 444 S.E.2d 317 (1994) (claim denied); dry cleaners who lose their wedding dresses, *Evans v. Willis,* 212 Ga.App. 335, 336, 441 S.E.2d 770 (1994) (claim denied);

---

**2.** The standard has also been expressed as "comprised of four elements," essentially intent or recklessness, outrageousness, causal connection between conduct and distress, and severe reac-tion. *Phillips v. Pacific & Southern Co.,* 215 Ga.App. 513, 515–16, 451 S.E.2d 100, 102 (1994); *Bridges v. Winn–Dixie Atlanta,* 176 Ga. App. 227, 230, 335 S.E.2d 445 (1985).

adoption agencies who question the paternity of their children, *Families First v. Gooden,* 211 Ga.App. 272, 276, 439 S.E.2d 34 (1993) (claim denied); insurance companies that refuse to pay their claims, *Steptoe v. Auto-Owners Ins. Co.,* 210 Ga.App. 756, 757, 437 S.E.2d 626 (1993) (claim denied); claim adjusters who call them names and accuse them of deception, *Bekele v. Ryals,* 177 Ga. App. 445, 446, 339 S.E.2d 655 (1986) (claim denied); or other such persons—like Pat Parker—who have the unmitigated gall to question their integrity.[3]

### B. The Law in Context

Like the behavior described above, being called a "liar," without more, simply is not tortious. The recent torrent of such claims, however, threatens to wash away the historical foundations on which the tort of intentional infliction of emotional distress is built. Appreciation of those moorings is what safely guides jurists in its application.

Claims for mental damages of any kind remained unrecognized under the common law, e.g., *Lynch v. Knight,* 9 H.L.C. 577, 598 (Eng.1861), until approximately the turn of this century. *See Wilkinson v. Downton,* 2 Q.B.D. 57 (Eng.1897) (defendant liable for tricking plaintiff into believing that her husband had been grievously injured in an accident, where plaintiff suffered permanent physical injuries from the shock). The concept was also slow to take root in American law, due in part to the inherently "metaphysical," i.e., unverifiable, nature of mental injury. *See Mitchell v. Rochester Ry. Co.,* 151 N.Y. 107, 45 N.E. 354 (N.Y.1896). At first, compensatory mental damages were allowed, but only if an independent tort was proved, such as assault, *Atlanta Hub Co. v. Jones,* 47 Ga.App. 778, 171 S.E. 470 (1933), battery, *Interstate Life & Accident Co. v. Brewer,* 56 Ga.App. 599, 193 S.E. 458 (1937), or trespass, *American Sec. Co. v. Cook,* 49 Ga.App. 723, 176 S.E. 798 (1934). *Cf. Brooker v. Silverthorne,* 111 S.C. 553, 99 S.E. 350 (1918) (holding that words alone are insufficient to constitute assault, and so no redress possible);

*Head v. Ga. Pac. Ry. Co.,* 79 Ga. 358, 360, 7 S.E. 217 (1887) (recognizing compensatory damages for mental suffering and holding that "[w]ounding a man's feelings is as much actual damage as breaking his limbs."). And then, ever so gradually, a separate cause of action began to form.

#### 1. Bad Conduct

Initial acceptance of this new tort was implicitly premised on the proposition that conduct of an especially flagrant character is itself a fair guarantee that any emotional distress claimed by a plaintiff is genuine and not feigned. Concerns over verification were thus mitigated. *See generally* Prosser & Keeton, et al., The Law of Torts 57 (5th ed. 1984). The *intentional* or *wanton* nature of an act strongly implied flagrancy, e.g., *Dunn v. Western Union Telegraph,* 2 Ga.App. 845, 852, 59 S.E. 189 (1907) (citing *Chapman v. Western Union Telegraph,* 88 Ga. 763, 15 S.E. 901 (1891)), and so formed the enduring distinction between recovery for intentional or wanton infliction but not for negligent infliction in cases involving no physical harm. The rule was clearly established by the time of *Dunn* and reveals the legally crucial importance of showing *truly socially abhorrent conduct* causing distress of a very serious kind before any recovery may be had. *See also Young v. W. & A. Ry. Co.,* 39 Ga.App. 761, 767, 148 S.E. 414 (1929).

Actionable conduct might include spreading false rumors that plaintiff's son had killed himself, *Bielitski v. Obadiak,* 61 Dom.L.Rep. 494 (1921); leading an angry mob to plaintiff's door at night and threatening to lynch him, *Wilson v. Wilkins,* 181 Ark. 137, 25 S.W.2d 428 (1930); prolonged, repeated and severe sexual harassment accompanied by lewd behavior, *Coleman v. Housing Auth.,* 191 Ga.App. 166, 381 S.E.2d 303 (1989); vicious racial slander coupled with threats of death and telephone calls to plaintiff's family from the Ku Klux Klan, *Brown v. Manning,* 764 F.Supp. 183 (M.D.Ga.1991) (involving insurance claim adjuster); or other activities of a genuinely, exceptionally outrageous nature.

---

**3.** Emotional distress claims have also become a ubiquitous appendage to discrimination suits. *See, e.g., Ward,* supra; *Henrickson v. Pain Ctrl. & Rehab. Inst.,* 205 Ga.App. 843, 845, 424 S.E.2d 27 (1992), *rev'd on other grounds,* 263 Ga. 331, 434 S.E.2d 51 (1993) (claim denied). See this Court's decision in *Ward* for further comments on this unfortunate development.

## 2. Bad Words

Price's claim involves purely verbal conduct. In order to fully appreciate how his claim made it to trial, one must examine a twist in the Georgia case law. Interestingly, independent claims based specifically on verbal abuse were recognized a bit earlier than claims of outrageous conduct, but only where the plaintiff was a patron of an entity entrusted with serving the public, and only in an age where the public could reasonably express dismay at discourtesy from its common carriers and hotel staff. Courts viewed certain businesses as bound by an "implied contract" to exercise "extraordinary diligence" for their patrons' comfort. *E.g., Cole v. Atlanta & West Point Ry. Co.,* 102 Ga. 474, 475, 31 S.E. 107 (1897) (rail passenger, suspected of not paying fare, is publicly vilified as a "deadbeat" and "God damn liar"). Liability was eventually broadened to other "public" entities, e.g., *Dunn,* 2 Ga.App. at 847, 59 S.E. 189 (Western Union telegraph operator to hopeful patron: "Go to hell with your God damn message"), although the language used had to be objectively shocking to "a normal person of ordinary sensibility." *Ga. Ry. & Elec. Co. v. Baker,* 1 Ga.App. 832, 838, 58 S.E. 88 (1907).

Liability was not extended beyond situations involving patrons of particular public services; in Georgia there was some controversy over whether shopkeepers should be liable for insulting business invitees. The decisions eventually recognized liability for emotional harm where the proprietor breached his common law duty of ordinary care. For example, in *Miller v. Friedman's Jewelers,* 107 Ga.App. 841, 131 S.E.2d 663 (1963), a patron with a heart condition was yelled at and thrown out of a jewelry store. He subsequently suffered an increased heart rate and later sued the store. The court found no liability because, while business owners were obliged to protect invitees from "the tortious mistreatment or misconduct of the employees," the plaintiff could show no independent tort that would justify compensatory damages for emotional harm. *Id.* at 842–43, 131 S.E.2d 663. The court then expressly stated that insults alone did not constitute a separate tort claim. *Id.*

A year later, in *Brown v. Colonial Stores,* 110 Ga.App. 154, 138 S.E.2d 62 (1964), a customer was accused of forging a check. The Georgia Court of Appeals made clear, citing *Dunn* and *Cole,* supra, that liability for verbal abuse alone was contingent on the defendant having some extraordinary duty to the public. That duty could be violated by discourtesy, and if it were, the defendant could be liable for negligence. While railroads and telegraph companies had such a duty, "ordinary proprietorships" like a general store did not. *Brown,* 110 Ga.App. at 160, 162, 138 S.E.2d 62 (drawing distinction between "extraordinary care required of carriers" and "ordinary care" required of store owners). The appeals court then held that the store had not breached its duty of ordinary care, and that verbal abuse alone could not constitute an actionable claim. *Id.* at 158–59, 138 S.E.2d 62.

As these decisions taught, where the defendant had no "extraordinary" duty to the public and only verbal insults were alleged, the law was clear: "The defendant owes the plaintiff the moral obligation not to curse her, but this is too delicate and subtle an obligation to be enforced in the rude way of getting money compensation for a violation of this mere moral obligation." *Atkinson v. Bibb Mfg. Co.,* 50 Ga.App. 434, 178 S.E. 537 (1935). Or from the Fifth Circuit: "No Georgia cases are cited and we have been able to find none which go so far as to hold that abusing, insulting, harrowing and cursing an individual constitutes a wrong cognizable under the law of torts in the State of Georgia." *Johnson v. General Motors Acceptance Corp.,* 228 F.2d 104, 104 (5th Cir. 1955). *See also Barry v. Baugh,* 111 Ga.App. 813, 143 S.E.2d 489 (1965); *Brown,* 110 Ga. App. at 158, 138 S.E.2d 62 (quoting *Johnson* ).

But this clear distinction eventually blurred. As both parties noted in their pleadings, recent Georgia decisions have recognized a cause of action where " 'the defendant has wilfully and wantonly caused emotional upset to the plaintiff through the use of abusive or obscene language,' " *regardless of the relationship between defendant and plaintiff. Moses,* 187 Ga.App. at 224, 369

S.E.2d 541 (quoting *Tuggle v. Wilson*, 248 Ga. 335, 337, 282 S.E.2d 110 (1981)). The source of this proposition is the oft-cited *Tuggle* case, which involved a contract dispute between two equal parties to a real estate agreement. The Georgia Supreme Court held that "there is authority" for this extension of prior law, and then cited four cases, the first of which did not reach this legal issue, *Fountain v. World Finance*, 144 Ga.App. 10, 13–14, 240 S.E.2d 558 (1977) (concurrence questions whether a "invitor-invitee relationship" existed); the second of which expressly stated that "abusive language alone will not constitute a tort," *Beavers v. Johnson*, 112 Ga.App. 677, 680, 145 S.E.2d 776 (1965) (citing *Barry*, supra); the third of which involved the analytically distinct scenario of a plaintiff witnessing the severe beating of her nephew, *Massey v. Perkerson*, 129 Ga.App. 895, 896, 201 S.E.2d 830 (1973); and the fourth of which involved a business invitee and proprietor conduct insufficient to state an intentional tort for emotional distress, as in *Miller* and *Brown*, supra. *Jordan v. J.C. Penney Co.*, 114 Ga. App. 822, 824 (1966).

There was no authority for recognizing an independent cause of action for the intentional infliction of emotional distress through the use of abusive or obscene language. The damage, however, was done, and as a federal court sitting in diversity, to it we are bound. *See Johnson v. Fleet Finance, Inc.*, 4 F.3d 946, 947 (11th Cir.1993) (citing *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In another popular decision, however, *Moses v. Prudential Ins.*, the Georgia Court of Appeals held that this claim was not a "new type of tort," and that such claims would be held to the same extremely stringent standard as traditional claims based on outrageous conduct. 187 Ga.App. at 224–25, 369 S.E.2d 541. *See* supra part IV.B.1. The court's rationale was the same as had been expressed for so long in opposition to torts for emotional distress: "the court's justifiable concern that causes of action grounded upon emotional distress may give rise to fictitious, inflated or trivial claims unless properly circumscribed[.]" *Id.* at 224, 369 S.E.2d 541.

What the *Moses* court did not do, unfortunately, was reconfine claims based on verbal abuse *per se* to their original province of common carriers, telegraph companies, and others beholden to the public trust. This Court hopes the Georgia Supreme Court will soon decide to readjust Georgia law. With regard to the instant case, the foregoing analysis reveals (1) that being called a "liar," by one not owing a legally recognized duty of extraordinary care to the public, never should have been legally cognizable; and (2) that although for the moment it is cognizable, the claim will only succeed if the verbal abuse was so truly abhorrent that a reasonable person could assume that the victim must have suffered severe emotional distress.[4] Hearkening back to the directed verdict standard above, this Court finds that no reasonable trier of fact could have so found in the instant case.

### C. Two Special Considerations

That said, the Court must justify its ruling in light of two aggravating circumstances said to exist in this case. Plaintiff claims first that he and Mr. Parker had a "special relationship," and second, that Mr. Parker had "special knowledge." Plaintiff argues that the synergy between these two factors and Pat Parker's verbal abuse was enough to state a claim for the intentional infliction of emotional distress.

#### 1. Special Relationship

If the defendant has some relation or position which gives him actual or apparent power to damage the plaintiff's interests, the gravity of his conduct may be magnified thereby. The anxiety and loss of control felt by one who cannot protect his vital interests is rightfully viewed as an aggravating factor in emotional distress claims; in certain cases the defendant's leverage may be "something very like extortion." Prosser & Keeton, et al., The Law of Torts 61 (5th ed. 1984). Georgia courts have recognized this phenomenon most often when employees have sued

---

4. The *Moses* court expressed this standard as "the defendant's conduct must have been so abusive or obscene as *naturally* to humiliate, embar-rass, frighten, or extremely outrage the plaintiff." 187 Ga.App. at 225, 369 S.E.2d 541 (emphasis in original).

employers, e.g., *Bridges v. Winn–Dixie*, 176 Ga.App. 227, 230, 335 S.E.2d 445 (1985) (physically ill employee forced to take polygraph test and then accused by superiors of lying and stealing) (claim denied); when debtors have sued collection agencies, e.g., *American Security Co. v. Cook*, 49 Ga.App. 723, 724, 176 S.E. 798 (1934) (collector kicks in debtor's door, verbally abuses and threatens him, and leaves only when debtor attempts to summon police) (claim allowed); and yes, occasionally when insurance claimants have sued claims adjusters, e.g., *Ga. Farm Bureau Mutual Ins. Co. v. Mathis*, 197 Ga.App. 324, 326–27, 398 S.E.2d 387 (1990) (concurring opinion) (insurance representative in verbal disagreement with plaintiff over funeral expenses for plaintiff's grandson) (facts found insufficient to support plaintiff's verdict), *Brown v. Manning*, 764 F.Supp. 183 (M.D.Ga.1991) (adjuster yells racial slurs at plaintiff and has plaintiff harassed and threatened by the Ku Klux Klan) (claim allowed).[5]

But importantly, the *Bridges* court, while acknowledging a "special relationship" in that case, found no liability because " 'the testimony merely reveal[ed] a personal confrontation between disagreeing parties.' " 176 Ga.App. at 231, 335 S.E.2d 445 (quoting trial court order). This demonstrates a vital point: while probative, a "special relationship" is by no means dispositive for purposes of lodging a claim for the intentional infliction of emotional distress. The potency of the relationship itself must be considered: for example, the leverage wielded by an employer or police officer would be far more than that enjoyed by a claims representative. The power of one who knows the plaintiff intimately or controls much of his affairs is greater than that of a party operating at arms length. This Court agrees that the instant case indeed falls within the "special relationship" rubric, but that factor is simply not a weighty one here; Price and Parker had no long-standing relationship of trust, the amount of money at issue was not large, and the adjuster was clearly willing to repair Mr. Price's truck.

It is not enough for courts to acknowledge the existence of a "special relationship," and then, without further scrutiny, substantially lower the legal standard for a successful claim.

### 2. Special Knowledge

A second aggravating factor can be the defendant's awareness that the plaintiff is especially sensitive, susceptible, or vulnerable to injury through emotional distress at the defendant's conduct. Abusing another's vulnerabilities is considered needlessly "heartless" or "flagrant." Restatement (Second) of Torts § 46(1), cmt. f. *See, e.g., Gordon v. Frost*, 193 Ga.App. 517, 521, 388 S.E.2d 362 (1989) (special knowledge held by defendant pharmacist of plaintiff customer's medical condition); *Bridges v. Winn–Dixie*, 176 Ga.App. 227, 230, 335 S.E.2d 445 (1985) (special knowledge held by defendant employer of plaintiff employee's multiple sclerosis); *Delta Finance Co. v. Ganakas*, 93 Ga. App. 297, 300, 91 S.E.2d 383 (1956) (eleven-year old girl, home alone, threatened with incarceration if she did not let defendants in to repossess her mother's television).

As for claims adjusters, in *Interstate Life & Accident Co. v. Brewer*, 56 Ga.App. 599, 193 S.E. 458 (1937), defendant's representative visited a claimant bed-ridden with heart trouble. He demanded to know the nature of her illness and told her he was reducing her coverage. The claimant began to cry and told the representative to leave. The representative then threw $2.20 in coins at the claimant and walked out. When the claimant cried for help, the representative called to her that she did not need a doctor and "ought to die." *Id.* at 600–01, 193 S.E. 458. She then suffered a heart attack and passed out.

After a plaintiff's verdict, the appeals court found it significant that the defendant had been fully aware of the plaintiff's heart condition and the potential dangers of extreme stress, *id.* at 605, 193 S.E. 458, but had chosen to act in an incredibly callous manner nonetheless. The defendant's willful inflic-

---

5. The "special relationship" factor is occasionally invoked in other scenarios, e.g., *Gordon v. Frost*, 193 Ga.App. 517, 520, 388 S.E.2d 362

(1989) (pharmacist has long-time customer with serious medical history arrested for prescription fraud) (claim allowed).

**1574**

tion of mental suffering would have been actionable even without accompanying physical harm, *id.* at 610, 193 S.E. 458, and the court affirmed the trial court's denial of defendant's motion for new trial.

In the present case, Price claims that Parker knew of his heart condition when Parker accused him of lying, and for purposes of a directed verdict, the Court accepts this as true. In light of cases like *Bridges* and *Brewer*, the Court also accepts that Parker's "special knowledge" of Price's condition aggravated his alleged conduct. As above, however, this acknowledgment does not lead, *ipso facto,* to liability.

### V. Social Sensibilities and Emotional Distress

In fact, despite Price's insistence to the contrary, even though Parker controlled compensation for Price's truck and knew of Price's angina, calling him a liar *still* does not amount to tortious conduct. *Cf. Zakarian v. Prudential Ins. Co.,* 652 F.Supp. 1126, 1138 (1987) (finding that claimant was called a liar and holding that "such an isolated (though perhaps inappropriate) statement is simply insufficient to support an intentional infliction of emotional distress claim").

The very need to clarify this point is a judicial embarrassment. The past twenty years have witnessed a steady erosion of public courtesies and a steady sharpening of popular sensibilities, both fires stoked by rabid television reporting and talk show pop-psychology. We now harbor impatience for traditional manners but decry every affront, complaining to all who will listen about how we have been wronged. The Court cannot justify this decline, but it will accommodate it. The common law is founded upon gradual elaboration in response to societal change; when popular sensitivity is acute, the correct standards for claims of emotional harm must be meticulously observed, else litigation runs rampant and law becomes a caricature of itself. This concern is what has motivated the Court to dwell at length on the pedigree and usage of this tort called "the intentional infliction of emotional distress," and aspiring litigants would do well to heed it.

### VI. Conclusion

Even construing all facts in favor of the Plaintiff, no reasonable trier of fact could have found for the Plaintiff on his claim for the intentional infliction of emotional distress. As for a general negligence claim, Defendant at absolute best owed Plaintiff the ordinary care due a business invitee, and on the facts as alleged by Plaintiff, Defendant's employee's conduct breached no such duty. Verdict is hereby DIRECTED for the Defendant, State Farm Mutual Automobile Insurance Company.

SO ORDERED.